ARCEE BRUCE, ADMINISTRATOR (ESTATE OF LULA M. KNOTT) *v.* FLOYD McELHANNON, ADMINISTRATOR (ESTATE OF ISAAC McELHANNON)

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, JS.

Argued January 6—decided February 16, 1954

*Robert I. Ellis,* for the appellant (plaintiff).

*Harrison D. Schofield,* with whom was *Robert E. Mansfield,* for the appellee (defendant).

Daly, J. Lula Mae Knott, the plaintiff's decedent, and Isaac McElhannon, the defendant's decedent, died on March 19, 1952, between the hours of 11 p.m. and midnight. The deaths resulted from carbon monoxide fumes within a one-car garage, while each was in a sitting position on the front seat of the automobile owned by Isaac McElhannon. The plaintiff claims that the proximate cause of the death of Lula was the negligence of the defendant's decedent in running the motor of his vehicle within a closed garage, in shutting the door of the garage, and in permitting the inside of his car and the garage to become filled with fumes escaping from the exhaust of his car, when he knew or should have known that the car was occupied by Lula. The principal question in this case is whether the plaintiff sustained the burden of proving that the defendant's decedent was negligent in one or more of the ways alleged and that such negligence was the

proximate cause of the death of the plaintiff's decedent.

The finding contains the following facts: During the evening of March 19, 1952, the plaintiff's decedent, Lula, and the defendant's decedent, Isaac, met at the home of Mrs. Ollie Weller on Portland Street in Hartford. They spent an hour or two there and left at approximately 9:30 p.m. in Isaac's automobile. While they were guests at the home of Mrs. Weller, Lula and Isaac participated in the consumption of at least three one-quart bottles of beer. When Lula and Isaac were last seen alive, on the evening of March 19, 1952, Isaac was driving his car. The outside temperature was then about 33 degrees. During the balance of the night of March 19 and throughout the day and evening of March 20 Lula and Isaac did not return to their respective homes or report for work. During the evening of March 20 the Hartford police were alerted as a result of a report that Lula and Isaac were missing. Later in the evening of March 20 James Marshall found their dead bodies in Isaac's car, which was parked in the one-car garage used by Isaac, located in the rear of the premises known as 158-160 Bellevue Street, in Hartford. The garage was built of cinder blocks and had two windows and one roll-up type door. At that time Marshall broke part of the glass in the door of the garage, reached inside and unlocked the door. In the garage there was the odor of gasoline which had obviously been expelled from the exhaust of an operating automobile. The glass within the garage had been blackened by exhaust smoke, and on the inside of the garage door, at a point opposite to and facing the exhaust pipe of Isaac's car, was a black smoke mark. The ignition of the car was on and the gasoline tank was

empty. The motor and the battery were dead. The lifeless body of Lula was found in a sitting position in the center of the front seat of the car. Isaac's body, also lifeless, was in a sitting position to the right of Lula in the front seat. Lula's coat was off, resting behind her on the back of the front seat. Her blouse was open in front. Isaac's coat was off, resting behind him on the back of the front seat. His trousers were open in front. The windows and doors of the automobile were closed. Isaac was then thirty-four years of age, married and separated from his wife. Lula was nineteen years of age and married; her husband was absent from Hartford in the armed forces of the United States. She did not know how to operate a car. Neither she nor her parents, with whom she had lived since birth, had ever owned a car. For more than a year Isaac had been the owner of the automobile. It was equipped with a heater. It was necessary to keep the motor in operation in order to generate heat in the heater of the car. Isaac had a Connecticut motor vehicle operator's license and had obtained his first one on June 28, 1950. From the position of the bodies and the disarray of their clothes, it is apparent that Lula and Isaac went to the garage to pursue a clandestine extramarital relationship. Both wished to escape detection.

Upon the foregoing facts the court concluded that there was no evidence to show that Isaac was running an automobile motor in a closed garage or to show that he closed the door of the garage, and it rendered judgment for the defendant. The plaintiff claims that the conclusion was not warranted because, he says, the evidence compelled an inference that Isaac did do those things. In the absence

of direct evidence, the trier is entitled to draw reasonable and logical inferences. *Esserman* v. *Madden,* 123 Conn. 386, 388, 195 A. 739; *Shaughnessy* v. *Morrison,* 116 Conn. 661, 664, 165 A. 553. Conclusions, however, ought not to be based upon guess or speculation. *Lemmon* v. *Paterson Construction Co.,* 137 Conn. 158, 162, 75 A.2d 385; *Savin Express Co.* v. *Hanover Fire Ins. Co.,* 132 Conn. 181, 184, 43 A.2d 69; *White* v. *Herbst,* 128 Conn. 659, 661, 25 A.2d 68; *Latham* v. *Hankey,* 117 Conn. 5, 10, 166 A. 400. Whether the subordinate facts found warrant a particular inference therefrom is for the trier to determine, and if the trier concludes that they do not his conclusion in that regard must stand unless no reasonable person could reach it. *Donovan* v. *Connecticut Co.,* 86 Conn. 82, 86, 84 A. 288. The trial court did not find that Isaac drove his car into the garage. His lifeless body was not found behind the steering wheel. It was found in a sitting position to the right of Lula in the front seat of the automobile. The conclusions of the trial court that "Isaac and Lula may well have entered upon a suicide pact," that "Isaac and Lula, in the absence of the countervailing evidence, may well have contributed equally to the unknown factors which caused their deaths," and that, "Lula's body being closer to the ignition switch than Isaac's, there is an equal probability that Lula rather than Isaac caused the motor of Isaac's car to run" are not conclusions that such events took place. Obviously, they were stated for the purpose of elucidation. They show clearly why the situation could not be removed from the realm of inadmissible speculation and conjecture. We cannot say that the trial court acted unreasonably in refusing to infer that Isaac was the one who was running the motor in the closed garage or was the one who closed the garage

door. We cannot hold that the trial court erred in concluding that the plaintiff failed to sustain the burden of proof.

There is no error.

In this opinion the other judges concurred.