## ROGERS INVESTMENT COMPANY *v.* F. W. WOOLWORTH COMPANY

ALCORN, C. J., HOUSE, THIM, RYAN and SHAPIRO, Js.

Argued February 3—decided March 24, 1971

*Abraham S. Silver,* for the appellant (plaintiff).

*Louise H. Hunt,* for the appellee (defendant).

THIM, J. This case concerns an amount of money which the defendant claims is owed to it by the plaintiff under the provisions of a lease. The defendant F. W. Woolworth Company was the tenant in a building in New Britain. The plaintiff was the owner of that building, having purchased it from the previous owner in July, 1963. The defendant had been a tenant in that building since January 5, 1951. Under a provision of the lease, which admittedly binds both of these parties, if an eminent domain taking occurred prior to the termination of the lease, the landlord would reimburse the tenant for unamortized "improvements or alterations . . . on the demised premises." On November 30, 1967, the premises were condemned. In the condemnation proceeding the plaintiff introduced evidence to the effect that the defendant claimed $63,244.56 under this provision in the lease. The award in the condemnation proceeding was released under a stipulation, with the disputed amount assigned to the defendant. That amount was, by agreement, held in escrow pending the outcome of negotiations between the parties. On the failure of the parties to reach an agreement concerning the $63,244.56, hereinafter referred to as the escrow fund, the plaintiff landlord instituted this action to recover the escrow fund.

The complaint recites that the defendant has not substantiated its claim as to the amount due under the lease, and that, therefore, the plaintiff has a right to the return of the escrow fund. The plaintiff claimed damages totaling $75,000. The holder of the escrow fund was a defendant to the original

complaint. As to him, however, the case was withdrawn. A substitute complaint was then filed, which is, in substance, identical to the original complaint.

In its answer, the defendant denied the material allegations of the plaintiff's complaint, and claimed, by way of special defense, that it was entitled to the escrow fund. The defendant also filed a counterclaim alleging specific improvements and alterations which it had made, and claiming $63,000. The plaintiff then filed an answer to the counterclaim, and also a special defense which alleged that certain expenditures contained in the counterclaim were not covered by the lease provision and that others were already amortized. The defendant then filed a reply to the special defense of the plaintiff.

On the conclusion of the trial, the court found that the defendant had substantiated claims in the amount of $28,260.06, plus proportionate interest, and awarded that amount to the defendant, to be paid from the escrow fund. The plaintiff was awarded the remaining $34,984.50, plus its proportionate share of the interest on the fund. From the judgment rendered, the plaintiff appealed, requested a finding, and assigned as error: (1) Certain evidentiary rulings; (2) certain conclusions in the finding claimed not to be supported by the subordinate facts set forth in the finding. The defendant also assigned error, claiming: (1) That certain paragraphs of the finding were without any evidentiary foundation; (2) that certain conclusions were not supported by the subordinate facts as set forth in the finding; and (3) that the court refused to find certain material admitted or undisputed facts as set forth in the counterfinding.

In order to untangle the somewhat complicated claims in this case, we begin by noting the proofs

which were required of each party to this action.
The plaintiff has alleged that the defendant has not
substantiated its right to the escrow fund. The
defendant has alleged that it can substantiate its
claims to the fund. It, therefore, must substantiate
them in order to recover. The defendant's recovery
will be only to the extent that it carries that burden.
Under the circumstances, to the extent that the
defendant fails to establish its claims the plaintiff
may recover. On the record it is apparent that no
damages in excess of the amount of the escrow fund
plus accrued interest have been demonstrated by
either party. Under no circumstance, therefore,
may more than that amount be recovered.

All of the issues on this appeal relate to three of
the defendant's exhibits which were admitted by
the trial court and objected to by the plaintiff. It
is obvious that these exhibits were the basis of the
finding of the trial court. Each of the exhibits
bears the title: "Statement of Alteration Account."
Hereinafter they will be referred to as the exhibits.
The defendant claims that they show the expendi-
tures for which it is to be reimbursed. The plaintiff
objected to their introduction on two grounds. First,
they are not admissible business entries within the
intent of General Statutes § 52-180, and second, they
are speculative. The defendant claimed, and the
trial court agreed, that they were admissible busi-
ness entries and that they were not speculative.
The defendant also claims, on appeal, that they were
admissible because the plaintiff had relied on them
in the condemnation proceeding and that, there-
fore, the plaintiff is judicially estopped from deny-
ing their validity as demonstrative of the amounts
owing. We believe that these evidentiary issues
are determinative of the basic issue of this appeal.

If the exhibits were admissible, and if they were not speculative, the defendant has carried its burden. If they were inadmissible or speculative then the defendant has demonstrated its inability to substantiate its claims and the plaintiff has borne its burden.

We turn first to the issue of judicial estoppel, for, apparently, if that principle applies, the exhibits would be admissible and not speculative even if the documents should otherwise be found not to be admissible business entries and to be speculative. The contention appears to be that, having used these documents to substantiate a debt owing to the defendant, the plaintiff may not now deny they are admissible and that they are proof of that debt.

The stipulation of the parties concerning the escrow fund was before the referee in the condemnation proceeding. The referee was made aware that a definite amount had not, at that time, been agreed on. Further, the stipulation itself was very clear on that point. It stated, in part: "[T]he amount of the claim of The F. W. Woolworth Company is in dispute and will require time to determine the interests of the parties . . . [the] escrow fund shall be deposited in a savings account bearing interest until such time as the figure is determined either by settlement or by a hearing before a referee." It is obvious that where an amount is in dispute, a final compromise, if one is reached, will most likely be something less than the full amount claimed. It is also obvious that if a claim goes to a hearing there is a possibility that it will not be satisfactorily proven, and thus the claimant will get nothing. These points were certainly apparent to the referee in the condemnation proceeding. In fact, in his memorandum he noted that there was a stipulation

"calling for pro rata reimbursement of $63,000." He did not say the fund was a debt owed by the plaintiff.

The actual difficulty with the defendant's claim of judicial estoppel is that it would have us hold that the use of evidence to substantiate the fact that a claim is being made, and the amount of that claim, is tantamount to an admission that the claim is valid. Certainly that is not so. The plaintiff has clearly admitted that, based on the exhibits, the defendant claims the entire escrow fund. It does not admit that the claim is valid or that the exhibits substantiate that claim. Under the rule enunciated in *Kucza* v. *Stone,* 155 Conn. 194, 198, 230 A.2d 559, it is clear that a prior judicial claim by a party is admissible in order to attack the credibility of a present claim. A party whose claim is under attack may, however, explain the prior claim. Thus, the prior claim is admissible, but not as proof of the fact contained therein. The prior claim does not estop the attacked party from showing the true fact. Here, as noted, the prior claim shows, on its face, that there was no admission contrary to the claim in this case. We hold, therefore, that judicial estoppel does not apply in the present situation. The referee in the condemnation proceeding was correct in considering the disputed amount in arriving at the award value. That amount was relevant to the value of the property, and which party would eventually receive it was of no consequence in the determination of the value.

We next turn to the contention of the plaintiff that the exhibits are speculative. The basic contention here is that, even assuming that the exhibits were admissible as business entries under General Statutes § 52-180, they are of no evidentiary value

in substantiating the defendant's claims, that is, they do not provide sufficient information from which the necessary conclusions can be drawn. Since it is apparent that the finding and conclusions of the trial court are based entirely upon those documents as proof of expenses incurred, if those documents are indeed speculative, we must find error.

A conclusion must not be based on guess or speculation. *State* v. *Ferraro,* 160 Conn. 42, 46, 273 A.2d 694; *Bruce* v. *McElhannon,* 141 Conn. 44, 48, 103 A.2d 335. Here, the trial court concluded that the defendant's exhibits represented a record of improvements or betterments as contemplated under the reimbursement clause of the lease. It further concluded that certain items on those exhibits were new construction and were, therefore, to be paid by the plaintiff. The court also concluded that descriptive material on the reverse of exhibit 1 showed construction as contemplated by the lease. Finally, the court concluded that certain items listed on the exhibit were not reimbursable within the contemplation of the terms of the lease. Apparently, all such conclusions were based on the defendant's exhibits, as neither the record nor the briefs mentions any testimony beyond a single witness who testified concerning the exhibits as regular business entries.

The lease involved in this case provides that the landlord will assign to the tenant a sum equal to the unamortized portion of expenditures made by the tenant for improvements or alterations. It is apparent, however, that such expenditures are not meant to include those items which are to remain the property of the tenant. Such items include "trade fixtures, equipment and other property installed in or attached to the demised premises."

Stated examples of such property are: Counters, shelving, showcases, mirrors, slides, furnaces, radiators and air conditioning, cooling and other movable machinery. Since items of this type may be removed by the defendant, it is certain that they could not have been contemplated as improvements or alterations to the premises. Any other construction of the terms of the lease would be clearly erroneous.

After considering the exhibits we cannot avoid reaching the conclusion that they are of no evidentiary value. The most complete exhibit is exhibit 1, for the majority of the expenditures are listed thereon.[1] The left column of exhibit 1 lists items of construction and other expenses. In the right column are listed the amounts expended. It is apparent that the items in the left column represent types of work. It is also apparent that exhibit 1 does not demonstrate what items were constructed. It lists, for example, "Carpenter & Woodwork" which item includes the cost of all objects which carpenters constructed with wood. Such work was done at a cost of $59,710.51. It is, however, impossible to determine what was constructed. It is claimed that this listing is exclusive of fixtures, yet neither the exhibit nor the finding supports such contention. Further, even if that contention were correct, there is no showing of what the defendant considered to be fixtures. It seems obvious that anything which, under article 9 of the lease, could be removed by the defendant, and to which it retained title, would not be compensable. Yet we cannot tell how much of the "Carpenter & Woodwork" item was for constructing and installing

---

[1] See Appendix I for the pertinent portion of the front side of exhibit 1.

removable fixtures. Built-in floor to ceiling shelves, for example, would serve as a wall, but could be removed by the defendant, and thus would be excluded from recovery under the terms of the lease.

The same problem exists with each of the other construction expenses listed. "Masonry Work" could have been for plastering walls. It could, however, also have been part of the construction of display cases or the like. "Iron & Steel Work" could be for displays, for machinery, or for almost anything. "Electrical Work" could be for anything, including air conditioning, heating or display units, all of which are excluded by article 9 of the lease. "Plumbing & Gas Fitting" could easily have been a portion of the installation of the air-conditioning system or of radiators, both of which article 9 specifically excludes. The "Sprinkler System" is the only listing which reasonably could be determined to be an improvement, for it is distinctly structural and permanent in nature. Yet even with the sprinkler system, it is impossible to determine what was done. It could have been repaired, unnecessarily replaced or, relying solely on the item 6 listing, even removed. "Heating" expenses might have been for a furnace, for furnace work, or for radiators, all of which are items specifically excluded by article 9. "Sheet Metal Work" is also susceptible of many interpretations, and could well include work on fixtures, air-conditioning ducts, and the like. "Plate and Other Glass" is specifically restricted to "In Building Construction Only," yet, again, there is no way to ascertain the exact objects constructed, and thus their proper classification under the lease. For example, a window to a store office within the store could be included, while the wall of which it is a part could be a fixture rather than a permanent

improvement. Further, under the lease, the landlord would have been fully responsible for the cost if the glass were used in exterior windows. That possible use is, therefore, most unlikely. Thus, the statement in the exhibit, that the glass was part of building construction, is an unsupported conclusion which cannot be verified on the record. "Painting & Decorating" could refer to anything. If shelves and display cases were painted or decorated, the cost thereof would not be recoverable. If walls were painted, however, that cost would be recoverable. Which, or how much of each, was painted and decorated, is totally unascertainable from the exhibit. "Air Conditioning and or Ventilation" is specifically excluded in article 9. It remains the property of the tenant, can be removed, and is not an improvement or alteration. It was correctly excluded. "Sundries: . . . Blue Prints" could also be for any purpose, and their content would determine whether their cost could be recovered from the plaintiff. There is no finding as to their content, and thus there is no basis on which to allow recovery for their cost.

The reverse side of exhibit 1 further confuses the meaning of that exhibit.[2] As can be observed, the reverse side notes what was done to the store. Thereafter follows a list of expenses. Those expenses are not tied to the description, and the finding fails to mention the amounts there listed. The items are ten of the fourteen which are listed on the front of the exhibit. It is interesting to note that some of the items correspond, in amount, to the front listing (e.g., "Iron & Steel"), while others do not (e.g., "Carpentry & Woodwork"). The aggregate total on the reverse side is $94,452.95, while the construction costs on the front of exhibit 1 total $175,841.91,

[2] The reverse side of exhibit 1 is reprinted in Appendix II.

a difference of over $80,000. If either of the amounts is to be considered as alteration expenses, the reverse side appears to be more explicit, as it at least states, generally, the items constructed. It is thus less speculative. Even on the reverse side of the exhibit, however, it is impossible to be certain. Further, it is impossible to determine what each side contemplates. Thus, it is not even possible to determine which figures, those on the front or those on the back, are the true expenses which were incurred by the defendant and which would be recoverable.

The overall view of exhibit 1 demonstrates most clearly that it does not support the finding of the trial court. At most it shows moneys which were expended for general construction in preparing the premises for use. The allocation of those expenses for reimbursable construction under article 22 of the lease does not appear, for exhibit 1 does not allocate, it merely shows expenses within broad categories of types of labor and materials. Any allocation, therefore, given the facts found and the absence of any explanatory testimony, would necessarily be based on guess or conjecture. The conclusions were, therefore, improper and cannot be permitted to stand. Exhibits 2 and 3 are no more explicit than exhibit 1. They, too, suffer from the same defect and do not support the conclusions reached.

It appears that the defendant has probably expended a considerable sum on alterations and improvements. Yet the records kept and offered in evidence do not even provide sufficient information from which a court can make any determination as to the purpose of the work listed, let alone acquire sufficient information in order to be induced with the necessary reasonable belief that the expenses

claimed were most likely for improvements and alterations as contemplated by article 22 of the lease. See *Busker* v. *United Illuminating Co.,* 156 Conn. 456, 458, 242 A.2d 708; *Darrow* v. *Fleischner,* 117 Conn. 518, 520, 169 A. 197. The exhibits, therefore, have no evidentiary usefulness in determining how much the defendant spent on the type of construction work for which it is entitled to reimbursement from the plaintiff.

Since the defendant's exhibits are an insufficient basis for the court's determination, the issue concerning their admissibility as business entries is immaterial. Even if they were properly admitted, they could provide no foundation for the conclusions which the trial court attempted to draw from them.

We find, therefore, that the trial court erred. The defendant has failed to carry its burden of proving the amount incurred by it in altering or improving the leased premises. The plaintiff's claim was that the defendant was unable to substantiate its demand. In such a situation the sole approach available to the plaintiff was so to allege. The defendant would have to show otherwise, for it would be impossible for the plaintiff to demonstrate the absence of evidence by more than merely alleging that fact. The plaintiff's burden has thus been carried. The defendant, indeed, has not substantiated its claims for reimbursement. As a result, there is no reason to require a new trial.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiff on the defendant's counterclaim, and for the plaintiff to recover, on its complaint, $63,244.56, with interest from December 12, 1967, as accrued.

In this opinion the other judges concurred.

## APPENDIX I

DISTRICT OFFICE.... ALBANY, N. Y. .....DATE.... November 30, .....19 51

# STATEMENT OF ALTERATION AND BONUS ACCOUNT

Store No.... 294 ....Location.... New Britain, Conn. ....Date of { Opening ........................
{ Reopening.... June 28, 1951

## LEASE RECORD

| STREET ADDRESS | LEASE PERIOD | | | ANNUAL RENT | | | | |
|---|---|---|---|---|---|---|---|---|
| | Years | Begins | Expires | Under Lease | Est. Taxes & Ins. | Cr.Sub-Tenants | Net Rent | Cost to Sell |
| 219-27 Main Street | 21 ¼ | 2/1/51 | 4/30/72 | 28500.00 | — | — | 28500.00 | 4.75 |

*Min. Rental $28,500.00 — Tenant pays landlord
5% Total Sales Less min. rent & excess taxes.

Option In Lease To buy on bonfide offer.

Population of City.... 73663 ................. Est. Sales First Full Year (New Store) $............................
Sales Last Year (Old Store) $.... 420234.72 ............ Est. Sales First Full Year (Old Store—After Reopening) $.. 600,000.00

Date Alteration Work Began.... 2/6/51 ....Completed.... 6/28/51

### CONSTRUCTION (see code for classification)

| | | |
|---|---|---|
| 1. Carpenter & Woodwork | 59710 | 51 |
| 2. Masonry Work (Include Concrete, Tile, Plastering, etc.) | 5945 | 08 |
| 3. Iron & Steel Work | 890 | 97 |
| 4. Electrical Work | 18326 | 76 |
| 5. Plumbing & Gas Fitting | 14237 | 10 |
| 6. Sprinkler System | 2529 | 70 |
| 7. Heating | 15269 | 88 |
| 8. Sheet Metal Work | 798 | 21 |
| 9. Plate & Other Glass (In Building Construction Only) | 684 | 59 |
| 10. Painting & Decorating | 6756 | 57 |
| 11. Fgt. & Cartage on Building Materials | — | — |
| 12. Air Conditioning and/or Ventilation | 49973 | 55 |
| 13. Building Equipment | 465 | 00 |
| 14. Sundries: W. L. Coughtry — Blue Prints | 253 | 99 |
| TOTAL CONSTRUCTION x x x x x | 175841 | 91 |

New Store { Estimated Cost of Alterations When Lease Was Approved as Shown by Lease Form Report. } $............ $............
Old Store { Estimated Cost When Proposition Was Submitted to Executive Office for Approval. } $.... 89042.00 $.... 31393.00

Construction Other Expenses
Estimated Bonus $.... 35000.00
### OTHER EXPENSES brokers fee 2500.00

| | | |
|---|---|---|
| District Office Constr. Dept. Local Expenses (Hotel & Railroad only) | 927 | 27 |
| District Office Constr. Dept. General Expenses (Plans, Specifications, Supervision, etc.) ....3....% | 5275 | 26 |
| Fixtures: Loss on Revised $.... 19491.73 ....Credit from Reserve Acct. $.... 12666.68 x x x x x | | |
| Expenses of Assistant Managers at Opening | 3193 | 50 |
| Expenses of Supts. at Opening (Hotel, Railroad, etc.) | 541 | 77 |
| Salaries Paid Store Help Before Opening | 14545 | 46 |
| Rent Paid During Alterations { Applies to new Stores or those closed during alterations } (Reverse Side) | 12770 | 83 |
| Real Estate Taxes Paid During Alterations { Applies to new Stores or those closed during alterations } Brokers Fee | 2500 | 00 |
| Expense Securing Lease— (Legal Expense) | 4521 | 22 |
| Expense Securing Lease— (Transportation and Meals) | 89 | 72 |
| Bonus Paid for Lease | 34235 | 00 |
| Moving Expenses (if incurred moving from one location to another) | 432 | 14 |
| Freight, Cartage & Express on Fixtures and Equipment | 3532 | 69 |
| Labor and Materials for Special Displays | 49 | 54 |
| Sundries (All other unusual expenses) Gas 7.62 | 2166 | 20 |
| Conn. Use Tax on Bldg. Material 899.73 | | |
| Corp. Tax (FOAP,FUI,SUI) Store Alt. Salaries 523.64 | | |
| Corp. Tax (FOAP,FUI,SUI) Carpenter Salaries 509.08 | | |
| Workmans Comp. Ins. Prem. 226.13 TOTAL OTHER EXPENSES x x x x x | 84180 | 60 |

### EQUIPMENT (DEPT. 52)

Total Cost Equipment Items (List by classification on reverse side) (19721.97) x x x x x

| | | |
|---|---|---|
| GRAND TOTAL | 260022 | 51 |
| CREDIT — Allowance Made by Landlord Toward Cost of Alterations | | |
| NET TOTAL | 260022 | 51 |

APPENDIX II

STORE # 294 – NEW BRITAIN, CONN.

Alterations consist of: – We took over a 3-story steel-supported brick and concrete building, formerly occupied by Montgomery Ward Co. and remodeled extensively to afford first floor and basement salesrooms. Second floor devoted to stockroom in front portion with girls' quarters and general office in the rear portion. Third floor devoted to stockroom, Fixture Room and Dept. #34 storeroom. Sales areas equipped with asphalt tile floor, plaster walls and composition ceilings. Fluorescent illumination throughout. Entire building sprinkled. After the official store opening it was deemed necessary to provide a modified air conditioning system. New Dept. 34 with 30 stools ranging along right side of first floor.

GENERAL CONTRACT

| | |
|---|---:|
| Carpentry & Woodwork | $ 26820.56 |
| Masonry | 5875.00 |
| Iron & Steel | 890.97 |
| Electrical | 17251.81 |
| Plumbing | 10366.05 |
| Sprinkler | 2529.70 |
| Heating | 14111.83 |
| Plate & Other Glass | 243.82 |
| Painting & Decorating | 579.49 |
| Air Conditioning | 15783.72 |
| | $ 94452.95 |

Rents Paid During Alterations:

| | |
|---|---:|
| New Location – 2/1/51 – 6/27/51 – 4 Mos. 27 days @ 2375.00 Mo. | $ 11637.50 |
| Old Location – 6/17/51 – 6/30/51 – 14 days @ 2500.00 mo. | 1133.33 |
| | $ 12770.83 |

Estimate Submitted to Executive Office

| Construction | $ 89042.00 | |
| Other Expense | 31393.00 | |
| Bonus Payments | 35000.00 | |
| Brokers Fee | 2500.00 | $ 157935.00 |

Actual Costs:

| Construction | $175841.91 | |
| Other Expense (Inc. Bonus & Brokers Fees) | 84180.60 | $ 260022.51 |

| Actual Cost Exceeded Estimate by | $ 102087.51 |
| Total Cost New Fixtures Purchased | $ 99930.12 |
| Dept. #34 | $ 78251.76 |
| Balance of Store | $ 21678.36 |
| Total Cost of Installing Fixtures | $ 13242.77 |