LOUIS TOOMEY *v.* ROBERT C. DANAHER, ADMINISTRATOR (ESTATE OF KATHRYN TOOMEY)

HOUSE, THIM, RYAN, SHAPIRO and LOISELLE, Js.

Argued April 13—decided May 18, 1971

*John F. Scully,* with whom, on the brief, was *David T. Ryan,* for the appellant (defendant).

*Joseph P. Kenny,* for the appellee (plaintiff).

THIM, J. This action was brought by the plaintiff Louis Toomey to recover damages from the estate

of his deceased wife as compensation for injuries, expenses and losses sustained by him as a result of a one-car accident in the early hours of the morning of October 28, 1967. At the trial, this action and an action by the defendant against the plaintiff for the deceased wife's injuries and death which arose out of the same accident, were tried together. The jury returned a plaintiff's verdict in this case. The defendant administrator then moved to set aside the verdict and for a judgment notwithstanding the verdict. The motion was denied and judgment was rendered on the verdict. From the judgment the defendant has appealed, assigning as error: The denial of his motions to set the verdict aside and for judgment notwithstanding the verdict; certain portions of the charge to the jury; the admission into evidence of a medical examiner's report; and the refusal of the trial judge to correct the finding.

The basic facts of this case are not in dispute. On the morning of October 28, 1967, a white Corvette owned by Louis Toomey was traveling east in the eastbound lane of route 15, just east of the Charter Oak Bridge toll station. At a point approximately seven-tenths of a mile from the toll station, the brakes of the car were applied, making skid marks on the road. The skid began in the right-hand lane. The car then veered to the left, began to spin, and struck the center guardrail, about 400 feet easterly from the start of the skid. As a result of the impact, the car split in two. Both the plaintiff and his wife were thrown out of the rear of the front section of the car. The rear section of the car remained in the area of the impact. The front section of the car continued on and finally came to rest against the guardrail on the right side of the highway some 122 feet easterly of the rear section.

Both victims were found alive and taken to the hospital. Mrs. Toomey died as a result of her injuries, never having regained consciousness. The plaintiff has substantially recovered from his injuries, but has a retrograde amnesia as a result of which he is unable to recall anything about the accident.[1]

On the trial of this case there were two basic areas of contest. The first was the question: Who was driving the car, Toomey or his wife. The second was whether there was any negligence. The jury found that Mrs. Toomey was the driver and that there was negligence. For reasons which will become apparent, we will consider only the second question: Has any negligence been demonstrated by a preponderance of the evidence?

There were no eyewitnesses to the accident. It involved but one car with two occupants. One of those occupants is dead. The other cannot recall the accident. Negligence, therefore, if any, can only be demonstrated by circumstantial evidence. In Connecticut, res ipsa loquitur does not apply to situations of this type; *Chasse* v. *Albert,* 147 Conn. 680, 684, 166 A.2d 148; since common experience shows that causes of motor vehicle accidents other than driver negligence are not infrequent. See *Briganti* v. *Connecticut Co.,* 119 Conn. 316, 320, 175 A. 679. Thus, the plaintiff must prove negligence on the part of the defendant, and, of course, that negligence must be the proximate cause of the injuries. Further, the evidence of negligence must be sufficiently clear so that the jury could so find without resorting to speculation or conjecture. *State*

---

[1] This has no reference to any remaining defects, permanent injuries and the like.

v. *Ferraro,* 160 Conn. 42, 46, 273 A.2d 694; *Palmieri*
v. *Macero,* 146 Conn. 705, 708, 155 A.2d 750; *Bruce*
v. *McElhannon,* 141 Conn. 44, 48, 103 A.2d 335.

In considering whether there was any evidence
to support a verdict we consider the evidence as
printed in the appendices to the briefs. *Lepri* v.
*Branford,* 152 Conn. 210, 211, 205 A.2d 486; *Pierce*
v. *Albanese,* 144 Conn. 241, 256, 129 A.2d 606. The
evidence therein shows the course of the car as has
already been related, as well as the testimony of a
toll collector who testified that a car which fit the
description of the Toomey vehicle had passed
through his toll lane at about the time of the acci-
dent, and that its operation was not unusual and
that it proceeded normally. Thus, the only evidence
on which the jury could base its conclusion of negli-
gence was the fact that the car skidded for about
400 feet, struck a metal guardrail, split in half
behind the seat, the body of the rear section dis-
integrated, and the front half of the car continued
on for a short distance. The plaintiff contends that
this evidence demonstrates that the vehicle was
traveling at an excessive rate of speed.

For speed to be "excessive" in the negligence
sense, that speed must be unreasonable. An unrea-
sonable rate of speed would be a speed which was
not safe considering the type of road, the amount of
traffic thereon, the condition of the road, and the
weather conditions. It would also include the
physical condition of the driver and the general
condition of the vehicle.[2] The posted speed limit is
indicative of the maximum reasonable speed under
optimum conditions. Exceeding the posted speed

[2] For example, if the driver were extremely tired a reduced rate
of speed would be in order. Likewise, if a mechanical defect had
become apparent, the maximum safe speed would be decreased.

limit, if the proximate cause of the accident, would be actionable negligence. We have no evidence of the physical condition of the driver other than a normal appearance of the driver of the car observed at the toll booth. Likewise, we have no evidence of any apparent mechanical defect. We do have evidence that the road was a divided limited access highway of two lanes in each direction, and with a right-hand shoulder; that the road was fairly straight at the point of the accident; that the road was well-lighted; and that traffic at the time was almost nonexistent. We have no evidence of the posted speed limit on route 15 at the point of the accident, but since it was a limited access highway a much higher rate of speed was permissible than that which might be deemed reasonable on another type of highway.

We now must determine whether the jury reasonably could have concluded that a 400-foot skid, and the resultant damage, could not have happened at a relatively high reasonable rate of speed, for only a speed in excess of such a high reasonable speed could be unreasonable, thus excessive, and thus negligent. In *Terminal Taxi Co.* v. *Flynn,* 156 Conn. 313, 318, 240 A.2d 881, we stated: "The jury could have found from the nature and the extent of the damage to the vehicles that Flynn was operating his car at an excessive speed." In the *Terminal Taxi* case the accident involved two automobiles and took place on a one-way, nonresidential city street. The Flynn vehicle struck the left rear of the taxicab with its right front and "[a]lthough the taxicab had been moving at the time of impact, the force of the collision was severe enough to completely demolish both the right front part of the Flynn car from the front center to the door on the right side and the left

rear part of the taxicab." Id., 315. The driver of the taxicab witnessed the accident and testified in court. Thus, in the *Terminal Taxi* case the jury could have concluded that extensive damage to two moving vehicles on a city street, near an intersection, demonstrated excessive speed. It must also be recalled that when two vehicles moving in the same direction collide, the collision speed is the difference between their two speeds. Under those circumstances it seems clear that the jury reasonably could have concluded, from common experience, that the speed of the Flynn vehicle was excessive. In this case, however, the situation is quite different. We are considering a much higher reasonable speed, a collision with a stationary object which is designed to withstand, or stop, a rapidly moving vehicle, and a car body constructed of fiberglass. "The rule requiring expert testimony applies only when the question involved goes beyond the field of the ordinary knowledge and experience of judges or jurors." *Bader* v. *United Orthodox Synagogue,* 148 Conn. 449, 454, 172 A.2d 192; *Jaffe* v. *State Department of Health,* 135 Conn. 339, 350, 64 A.2d 330. We believe that the extent of damage to this type of vehicle, at a high rate of speed, on collision with a metal guardrail, does require expert testimony before a jury reasonably may conclude that the vehicle was traveling in excess of that speed. On the evidence, therefore, the jury could not have concluded that excessive speed was the cause of this unfortunate accident, or if the jury did find excessive speed, it was unwarranted by the evidence presented.

It is certainly clear that there is no evidence pointing to any other cause of the accident. The brakes were suddenly applied and the skid began. As we have pointed out many times, there could be

numerous causes for such a loss of control. See *Chasse* v. *Albert,* 147 Conn. 680, 684, 166 A.2d 148; *Palmieri* v. *Macero,* 146 Conn. 705, 708, 155 A.2d 750; *Puza* v. *Hamway,* 123 Conn. 205, 193 A. 776; *Sigel* v. *Gordon,* 117 Conn. 271, 275, 167 A. 719. While both the car and the driver, when observed at the toll station, appeared to be normal, that does not take into account a sudden change of conditions. A sudden mechanical failure, such as a tire blowout or a failure of the steering mechanism, has not been ruled out. Such a failure, even if due to negligence, would bar recovery in this case, since the plaintiff was the owner of the car. Assuming that the wife was the driver, the plaintiff produced evidence to show that the autopsy disclosed no apparent heart-connected abnormality. The claim seems to be that since there was no evidence of an old or new myocardial infarction, and since there was nothing abnormal about the coronaries, the valves, the great vessels leading from the heart, and the microscopic findings of the heart, that no sudden illness could have overtaken the wife. Since all sudden illnesses are not heart-connected, we cannot rule out sudden illness as a possible cause of the accident. Further, with no eyewitnesses, we cannot rule out a sudden emergency. "[W]hile the marks upon and about the highway [as well as the damage to the car in this case] indicated that the car was then traveling at a fast rate of speed and was out of control, there was no basis for finding what caused the vehicle to make these marks or to follow the course which it did." *Palmieri* v. *Macero,* supra, 707. Inferences to be drawn from the facts must be reasonable and logical, and must not be the result of guess, conjecture or speculation. *Palmieri* v. *Macero,* supra, 708; *Bruce* v. *McElhannon,* 141 Conn.

44, 48, 103 A.2d 335. A conclusion of common-law negligence on the facts of this case could have only resulted from conjecture or guess. The verdict of the jury therefore cannot stand as it applies to common-law negligence.

The trial court charged the jury concerning three statutes. It is not necessary to decide whether, on the evidence, the plaintiff was entitled to the charge on statutory negligence but, as given, the jury could have found the defendant negligent due to the violation of one of those statutes. One statute concerns the prohibition against driving over or across any dividing space, barrier or section of a divided roadway, except at an established crossover. General Statutes § 14-237. A second statute concerns the prohibition against changing lanes on a multilane highway before ascertaining that such a movement can be made safely. § 14-236 (1). The third statute provides that no vehicle may enter onto, or exit from, a controlled access highway except at established entrances and exits. § 14-238. A violation of any of these statutes would constitute negligence. Before that negligence could support liability, however, a causal connection between the negligence and the injury must be established, and the injury must be of the type which the statute was intended to prevent. *Coughlin* v. *Peters,* 153 Conn. 99, 101, 214 A.2d 127; *Knybel* v. *Cramer,* 129 Conn. 439, 443, 29 A.2d 576; Prosser, Torts (3d Ed.) § 35; see *Angier* v. *Barton,* 160 Conn. 204, 211, 276 A.2d 782.

Of the three statutes, the third has no application as to negligence in this case, since there is no evidence that the vehicle entered onto, or exited from, the highway at other than a proper exit or entrance. Whatever else the vehicle did during its uncontrolled

skid and collision, it did not leave the highway. As to crossing a barrier or the like, and as to changing lanes, those statutes are designed to protect against collisions with other vehicles, and not to protect against collision with the barrier itself. Further, even assuming that two of these statutes were violated, and that the violations were negligence, they were not the proximate cause of the accident. When each of these statutes was violated, the car, according to uncontroverted testimony, was already out of control. Thus, if a negligent act caused the accident, it had already taken place. The two violations did not cause the accident; rather, they were part of it. The violations would be negligence only if they caused the accident. Here, they did not. They were a result of whatever did cause it. Were we to hold otherwise, any loss of control on a divided two-lane highway, where the vehicle either left its lane or crossed a barrier, would support a finding of liability to a party injured thereby. That is clearly not our law. See *Danzell v. Smith,* 150 Conn. 35, 39, 184 A.2d 53. Thus, the jury could not have found statutory negligence from the evidence in this case.

One last possible basis for a finding of negligence in this case would be that it was admitted. Such a claim is based on the fact that the defendant, in the companion case, where he was the plaintiff, alleged in his complaint that the cause of the accident was negligence. It appears to be claimed that this was an admission of negligence. This is a case where, as we have noted, there is no knowledge of what caused the accident. Any such conclusion must be based solely on circumstantial evidence. Neither of the victims can supply any facts; one due to death, and the other due to amnesia. Thus,

the complaints were framed based on conclusions drawn from circumstantial evidence. It would, therefore, be most unjust, under the facts in this case, to say that negligence was admitted, since neither party had any actual knowledge. They made, respectively, claims which each hoped to prove from the evidence. What each party has said, in effect, is: I was not driving, but if the jury finds that I was, I was not negligent. This is not an admission of negligence. Further, as we noted in *Rogers Investment Co.* v. *F. W. Woolworth Co.,* 161 Conn. 6, 11, 282 A.2d 882, a prior judicial claim by a party is admissible in order to attack the credibility of the present claim, but the party who is under attack may explain the prior claim. See *Kucza* v. *Stone,* 155 Conn. 194, 198, 230 A.2d 559. Here, the defendant's claim of negligence pertained to the other party and was part of a companion case. That pleading was not offered as evidence in this case, and thus the jury could not apply statements therein to this litigation, and thus to the negligence of this defendant. The jury, therefore, could not have concluded that the defendant had admitted that negligence was the cause of the accident.

On the evidence, as printed in the appendices to the briefs, the jury could not have found negligence on the part of the defendant. The motion to set aside the verdict, and for a judgment notwithstanding the verdict, should have been granted. As a result of this conclusion it is not necessary to consider the defendant's further claims of error.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendant in accordance with his motion for judgment notwithstanding the verdict.

In this opinion the other judges concurred.