Jamie Madow *v.* Benjamin A. Muzio et al.

Cotter, C. J., Loiselle, Bogdanski, Longo and Peters, Js.

Argued October 18—decision released December 26, 1978

*Paul Smith,* with whom, on the brief, was *John W. Pickard,* for the appellant (plaintiff).

*John F. Gill,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellees (defendants).

BOGDANSKI, J.  On May 27, 1976, the plaintiff was involved in a two-car accident which resulted in the death of Daniel Fritz.  Pursuant to a hearing held under the provisions of § 14-111 of the General Statutes, the defendant commissioner of motor vehicles found that the plaintiff had caused or contributed to the death of Daniel Fritz, and ordered that the plaintiff's driver's license be suspended for a period of one year.[1]  The plaintiff then appealed to the

---

[1] "[General Statutes] Sec. 14-111. . . .(c) SUSPENSION OF LICENSE AFTER FATAL ACCIDENT.  The commissioner shall not suspend the license of any operator concerned in any motor vehicle accident resulting in the death of any person solely because such death has occurred, unless the facts as ascertained by the commissioner, after a hearing, indicate responsibility on the part of such operator for such accident, and, if, after such hearing, the commissioner finds that such operator has caused or contributed to such death through the violation of any provision of this chapter or of chapter 248 or through negligence or carelessness . . . ."

Court of Common Pleas, which ordered the appeal dismissed. From that judgment, the plaintiff has appealed to this court alleging that the court erred (1) in finding that the evidence in the record reasonably supported the commissioner's decision, and (2) in concluding that the commissioner's action was not tainted by the admission of inadmissible evidence.

We note at the outset that the commissioner's decision and the trial court's review are both governed by the Uniform Administrative Procedure Act (hereinafter the UAPA).[2] Under the terms of that act, the scope of judicial review is limited. In cases involving administrative appeals it is not the function of this court, nor was it the function of the trial court, to retry the case or to substitute its judgment for that of the administrative agency. If the decision of the agency is reasonably supported by the evidence in the record, it must be sustained. *C & H Enterprises, Inc.* v. *Commissioner of Motor Vehicles*, 167 Conn. 304, 306, 355 A.2d 247; *Hart Twin Volvo Corporation* v. *Commissioner of Motor*

---

[2] The UAPA (General Statutes §§ 4-166 through 4-189) provides uniform standards for reviewing all nonexempted administrative agency actions, including suspension of an operator's license by the motor vehicle department. The standards for review are set out in § 4-183 (g) as follows: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

*Vehicles,* 165 Conn. 42, 49, 327 A.2d 588; *Demma* v. *Commissioner of Motor Vehicles,* 165 Conn. 15, 17, 327 A.2d 569; see *Paul Bailey's Inc.* v. *Commissioner of Motor Vehicles,* 167 Conn. 493, 496–97, 356 A.2d 114.

The record reveals that the following evidence was before the hearing tribunal: At about 4:15 p.m. on May 27, 1976, the plaintiff was operating his Toyota automobile easterly on route 112 in the town of Salisbury with Daniel Fritz as a passenger. At the same time, Richard Schneider was operating his pickup truck southerly on route 41 also in the town of Salisbury. When the pickup reached the intersection of route 41 and route 112 it proceeded through and continued southerly along route 41. The plaintiff, on reaching the intersection, turned right onto route 41 and proceeded southerly behind the pickup. Thereafter, upon reaching a passing zone on route 41, the plaintiff attempted to pass the Schneider vehicle. As he was attempting to pass, the pickup swerved into the passing lane. The plaintiff then dropped back behind the pickup truck. The pickup thereupon reduced its speed to about thirty-five miles per hour. At this point, route 41 was posted for fifty miles per hour. At the next passing zone, which was about a quarter mile long, the plaintiff again attempted to pass the pickup truck. By the plaintiff's own admission the pickup was then traveling about forty-five to fifty miles per hour. As the plaintiff's vehicle came abreast of the pickup, the pickup increased its speed and again crossed over into the passing lane. The plaintiff then increased his speed in order to move ahead of the pickup which was moving faster and faster. The pickup then dropped back and when the plain-

tiff could no longer see it, he began to turn into the west lane. As the plaintiff was attempting to cut back into the west lane, his vehicle and the pickup collided.

The collision spun the plaintiff's vehicle around and both vehicles then traveled down route 41 in a "T" formation with the pickup pushing the plaintiff's vehicle along the southbound lane and off the highway into an apple tree located sixteen feet from the shoulder of route 41. The apple tree, which had a diameter of eighteen inches, was uprooted by the force of the blow. Skid marks from the vehicles measured approximately one hundred fifty-nine feet in length along the traveled portion of route 41 and an additional forty-one feet off the west side of the highway. The plaintiff's vehicle was totally demolished while the pickup sustained extensive damage. Route 41 is a two-lane highway, and, at the point of the collision, is straight with a slight downgrade to the south. It was daylight, the weather was clear and the road was dry. The passenger in the plaintiff's vehicle, Daniel Fritz, was fatally injured.

In his report, the commissioner found that the point of impact indicated that "the Toyota was attempting to return to the west lane before completely passing the truck or that the truck operator was trying to prevent being passed by Mr. Madow in his vehicle." The commissioner also found that "[t]he skid marks, the damage to the vehicles and the uprooting of a large tree indicated that Mr. Madow was proceeding at an excessive rate of speed." He then concluded "[t]hat Jamie Madow, on May 27, 1976, at Salisbury, Connecticut, caused

or contributed to the death of one Daniel Fritz through negligence in the operation of a motor vehicle."

## I

The plaintiff, citing *Toomey* v. *Danaher,* 161 Conn. 204, 286 A.2d 293, contends that the commissioner erred in making the factual determination that the plaintiff was proceeding at an excessive rate of speed; that without the testimony of an expert, it was impossible for him to find excessive speed based upon skid marks and physical damage. We disagree.

The test with reference to speed is that rate of movement which is reasonable under all the circumstances and is that speed at which a reasonably prudent person would operate under similar or like conditions. *Michaud* v. *Gagne,* 155 Conn. 406, 412, 232 A.2d 326. "Excessive speed may ordinarily be proved by circumstantial evidence, such as vehicular damage and distance traveled after the application of brakes, without expert testimony as to its significance." *Waldron* v. *Raccio,* 166 Conn. 608, 612, 353 A.2d 770; *Terminal Taxi Co.* v. *Flynn,* 156 Conn. 313, 318, 240 A.2d 881 (damage where one vehicle overtook and hit another); *Petrillo* v. *Kolbay,* 116 Conn. 389, 393–94, 165 A. 346 (distance traveled after brakes applied, where vehicle hit pedestrian).

The *Toomey* case is clearly distinguishable on its facts. *Toomey* involved a one-car accident on a limited access expressway with the damage to the vehicle as the only evidence as to speed. In this case the evidence supporting the commissioner's finding of excessive speed included not only the physical facts of damage to the vehicles and skid

marks but also the testimony of the plaintiff himself, the admissions in his motor vehicle report, and the testimony of the investigating officer. While expert opinion might have been helpful in assessing the exact significance of the physical evidence, we cannot rule that in the absence of expert testimony the commissioner lacked the competence to consider such evidence. We find that the evidence in the record reasonably supports the commissioner's finding that the speed of the plaintiff's vehicle was excessive.

We note, moreover, that § 14-111 (c) does not require a finding that the negligence of the plaintiff was the sole or even the major cause of the accident and of the death resulting therefrom. The requirement of the statute is met by a finding that the negligence of the plaintiff *contributed to the death* of Daniel Fritz. The applicable rule in such a situation is set forth in *Merhi* v. *Becker,* 164 Conn. 516, 325 A.2d 270, where we stated (p. 521) that "where the negligence of the actor creates the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct. Restatement (Second), 2 Torts § 442B."

We conclude from our review of the evidence before the hearing tribunal that the evidence in the record was clearly sufficient to sustain the commissioner's finding that the speed of the plaintiff's vehicle was excessive and that the speed of the plaintiff's vehicle was a factor in causing the death of Daniel Fritz.

## II

The plaintiff next contends that the commissioner's action must be set aside because it was tainted by the admission of hearsay and prejudicial evidence. The evidence objected to includes a coroner's report; statements by two witnesses who did not testify; testimony as to the plaintiff's arrest; and the portion of the report of the investigating officer which included a written statement by Schneider, the operator of the pickup involved in the accident.

Section 4-183 (g) (5) of the UAPA provides that on review a court may reverse or modify an agency's decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record."

" This so-called substantial evidence rule is similar to the 'sufficiency of the evidence' standard applied in judicial review . . . if it affords 'a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' *National Labor Relations Board* v. *Columbian Enameling & Stamping Co.,* 306 U.S. 292, 299–300, 59 S. Ct. 501, 83 L. Ed. 660; see *Richardson* v. *Perales,* 402 U.S. 389, 91 S. Ct. 1420, 28 L. Ed. 2d 842; *Consolo* v. *Federal Maritime Commission,* 383 U.S. 607, 618–21, 86 S. Ct. 1018, 16 L. Ed. 2d 131; see also McCormick, Evidence (2d Ed.) § 352." *Lawrence* v. *Kozlowski,* 171 Conn. 705, 713–14, 372

A.2d 110, cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066. Under the "substantial evidence" rule, the erroneous admission of evidence will not invalidate an administrative order unless substantial prejudice is affirmatively shown. *Lawrence* v. *Kozlowski*, supra, 714; see *Damariscotta-Newcastle Water Co.* v. *Damariscotta-Newcastle Water Co.*, 134 Me. 349, 186 A. 799; *Balch Pontiac-Buick, Inc.* v. *Commissioner of Motor Vehicles*, 165 Conn. 559, 568, 345 A.2d 520; see also *Sisto* v. *Civil Aeronautics Board*, 179 F.2d 47, 51–52 (D.C. Cir.); *Whitfield* v. *Simpson*, 312 F. Sup. 889, 895 (E.D. Ill.).

From our review of the record we conclude that the plaintiff has not met this burden. Even if we assume that the evidence objected to was erroneously admitted[3] and strike all of the challenged evidence from the record, the evidence which then remains — consisting of the plaintiff's own testimony, the admissions contained in his motor vehicle report, the unchallenged portion of the investigating officer's testimony, and the physical evidence consisting of the skid marks, the damage to the vehicles, and the uprooting of the tree — is clearly sufficient to sustain the conclusion of the commissioner. Even when viewed as the only evidence in the record, the evidence set forth above provides "a substantial basis of fact from which the fact in issue [the negligence of the plaintiff] can be reasonably inferred."

[3] We note for the record that no error was committed through the admission of the coroner's report. As was stated in *Lawrence* v. *Kozlowski*, 171 Conn. 705, 718, 372 A.2d 110: "The coroner's report, although admittedly hearsay, is admissible . . . as a 'public record' . . . under the 'public records' exception to the hearsay rule." We also note that the admission of the investigating officer's testimony as to the arrest of the plaintiff was harmless error in view of the fact that the plaintiff's own accident report, which was admitted without objection by the plaintiff, establishes that the plaintiff was, in fact, arrested.

*National Labor Relations Board* v. *Columbian Enameling & Stamping Co.,* supra. Because the commissioner's findings and conclusions were not "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record," the decision of the trial court dismissing the appeal must be sustained.

There is no error.

In this opinion the other judges concurred.