[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an administrative appeal filed pursuant to Conn. Gen. Stat. 4-183, in which the plaintiffs challenge the declaratory judgment issued by the Division of Special Revenue on January 9, 1995 and confirmed by the Gaming Policy Board on May 25, 1995.
Facts
The plaintiffs matched all six of the numbers in a Lotto drawing held on December 21, 1993. A computer reading showed that two tickets were eligible for the total first tier prize of $5,618,438.86., The plaintiffs presented their ticket on May 10, 1994, and learned that they would receive $2,809,219.43 and be CT Page 2409 eligible for a check in the amount of $94,809.97 for twenty yearly installments. This amount represented one-half of the total prize money for first tier tickets. No claim for the second ticket was ever presented to the defendants during the year of presentation eligibility. The defendant made an effort to locate the missing ticket without success. The commissioner used the unclaimed money to supplement the Lotto drawing of December 23, 1994. It is the plaintiff's position that he is the only winner that has presented and claimed the first tier prize money. He claims he should have been entitled to the entire first tier jackpot, and that the defendant's refusal to award him the total first tier amount is arbitrary or capricious or is clearly erroneous in view of the reliable, probative and substantial evidence in the record.
Scope of Review
The court's function in an administrative appeal is not to retry the case or substitute its judgment for that of the agency.Madow v. Muzio, 176 Conn. 374, 376, 407 A.2d 997 (1978). The question is not whether the court would have reached the same decision, but rather whether the evidence in the record reasonably supports the conclusion reached by the agency.Williams v. Liquor Control Commission, 175 Conn. 409, 413,399 A.2d 834 (1978). Inasmuch as the scope of judicial review is so limited, "if the decision of the agency is reasonably supported by the evidence in the record, it must be sustained. C. HEnterprises, Inc. v. Commissioner of Motor Vehicles,167 Conn. 304, 306, 355 A.2d 247 (1964): Hart Twin Volvox Corporation v.Commissioner of Motor Vehicles 165 Conn. 42, 49, 327 A.2d 588
(1973), Derma v. Commissioner of Motor Vehicles, 165 Conn. 15,17, 327 A.2d 569 (1973); Paul Baileys Inc. v. Kozlowski,167 Conn. 493, 496-97, (1975)." Madow, supra at 376-77.
This view of the court's function has been repeatedly reaffirmed:
 "Judicial review of the commissioner's action is governed by the Uniform Administrative Procedure Act (General Statutes, c. 54, §§ 4-166 through 4-189), and the scope of that review is very restricted. Lawrence v. Kozlowski, 171 Conn. 705, [707, 708,] 372 A.2d 110 (1976). Neither this court nor the trial court may retry the case or substitute its own judgment or that of the defendant." C H Enterprises, Inc. v. Commissioner of Motor Vehicles, 168 Conn. 587, 589, CT Page 2410 362 A.2d 840 (1975); see General Statutes § 4-183 (g). "The court's ultimate duty is only to decide whether, in light of he evidence, the [commissioner] has acted unreasonably, arbitrarily, illegally, or in abuse of [his] discretion." Burnham v. Administrator, 184 Conn. 317, 322, 439 A.2d 1008 (1981); Riley v. State Employees' Retirement Commission, 178 Conn. 438, 441, 423 A.2d 87 (1979); see also Persico v. Macher, 191 Conn. 384, 409, 465 A.2d 308 (1983).
Buckley v. Muzio, 200 Conn. 1, 3 (1986) (footnote omitted).
Thus, this court sits as an appellate tribunal to determine only if, as a matter of law, the Board's decision is illegal, arbitrary or in abuse of its discretion.
Are the Regulations as Interpreted by the Defendant Vague andStandardless.
The initial regulation that the defendant relied upon is:
 Section V (A. 1.) of the procedures governing "Connecticut, Lotto" provides that: Winner(s) matching all six (6) of the winning numbers in any order will equally share in the first-level prize pool.
The defendant determined that the plaintiff possessed along with another person the winning first tier tickets for the first level prize pool. When the plaintiff presented his ticket to the defendant he was awarded his one-half equal share of the jackpot. The record indicates that the other ticket was never claimed and that the monetary share set aside by the defendant was included in a jackpot in a subsequent lotto and awarded in accordance with Section 12-568-5 (p) which states:
 The division shall retain for the holder of the winning ticket any prize which that holder has not claimed. If the prize remains unclaimed at the expiration of the appropriate time period pursuant to subsection (C)(2) of this section, such prize shall revert to the prize structure of future lottery games to be distributed to future winners.
From here the plaintiff's argument focuses on Section 12-568-1
which states:
At least forty-five percent (45%) of the total gross sales in CT Page 2411 any lottery game shall be returned as prizes to holders of winning tickets.
Plaintiff's house of chance is built on the supposition that since one-half of the first tier has not been claimed by the winning ticket bearer, the defendant has failed to implement Section 12-568-1 and has given out less than the 45% monetary distribution requirement to the players. From that position he thus reasons retrospectively that the commissioner should give him the full 34% of the first tier jackpot in order to meet the statutory mandate of 45% distribution. Thus the plaintiff argues that since he is the only presenter of a winning ticket that the regulatory scheme can and should be read to give him the whole amount set aside to meet the first tier statutory percentage distribution obligation.
In deciding this case this court will find that Section V (A.1) is clearly written, not contradictory in any way and was properly applied to the plaintiff. The plaintiff does not claim that the defendant improperly interpreted the regulation initially when the defendant set aside one-half of the first tier prize for the owner of the unclaimed ticket. The plaintiff argues that once the yearly period of claim passed and the money remained unclaimed the defendant should have made arrangements for the plaintiff to receive all of the unclaimed first tier prize money.
In order to understand the financial portion of this case it is necessary to set out how the first-tier money was arrived at by the defendant. The lotto game on the day of the actual winning tickets that matched the six numbers generated $1,992,252 in ticket sales. However for the previous five drawings no first tier ticket of 6 out of 6 was purchased. Therefore those funds, called "roll over" funds, were added to the winning jackpot. Further the plaintiff benefited from another $300,000 added to winnings from previously unclaimed jackpots. The $300,000 "augmentation" was the maximum that could be added to an individual jackpot in accordance with lottery rules. Thus, as the plaintiff admitted in oral argument, he benefited from unclaimed proceeds of other no show winners but now uniquely asks this court to declare that regulatory scheme arbitrary. Further, to reach the 2.8 million for which the plaintiff was eligible, the defendant applied an Annuity Factor of 1.6772 which basically compensates the plaintiff for his financial loss due to the Commission's practice of distributing the jackpot in 20 CT Page 2412 installments. Thus the plaintiff's jackpot was enhanced by the roll over, augmentation and finally the annuity factor by the defendant in arriving at his winnings.[1]
At the moment the plaintiff sought and received his winnings the defendant held back 17 1/2% of the first tier winnings for the other computer identified winning ticket holder. It is the plaintiff's claim that once the set aside was not claimed by the other winning ticket holder the defendant violated section12-568-1(e)(1) of the regulations, in that for that game
(emphasis supplied) 45% of the gross sales were not returned as prizes to holders of winning tickets. This court disagrees.
The record clearly establishes the type of games for which the 45% requirement is applicable. Nothing in the regulation establishes the interpretation that the plaintiff wishes this court to adopt. Here the plaintiff has directly benefited from the 45% requirement in that the winnings he received were increased by the roll over effect, the augmentation and annuity factor applied by the defendant. If this court adopts the plaintiff's reasoning the defendant would have to isolate each drawing for each tier of winners,[2] to make sure the 45% requirement is met. Common sense says that in cases where there is no first tier winner the 45% distribution factor would not be met. Further, in those cases the defendant cannot award more to a category than it is entitled to; nor does the defendant have the ability to account for unclaimed tickets. Under plaintiff's theory the defendant would have to go back and supplement the winnings of those who claimed their prize by the amount of those who didn't in accordance with the 45% pay out factor. Such a burden was perceived by the regulations and this court finds the defendant's position that the 45% requirement applies to the lottery distribution in general, rather than to the individual games, is proper.
A look at the chance distribution payout pattern of the defendant confirms the defendant's proper application of the regulatory mandate. For those who match 6 of 6 the defendant pays out 34.1%, for those in the 5 of 6 the % is 9.6 and for those in the 4 of 6 category the payout is 8.9%. Therefore in a perfect lottery drawing in which a first tier winner is present the effective payout of 52% would be significantly above the regulatory 45% mandate.
The defendant's interpretation comports with the regulatory CT Page 2413 requirements. The spin the plaintiff asks this court to adopt would lead to confusion and would interfere with the defendant's ability to effectively implement the game. Not surprisingly the application the plaintiff offers here would only be significant in the first tier cases where there was more than one ticket matching the six numbers and one of the persons holding a ticket fails to claim their prize. The class is very limited, and under the plaintiff's version the effect would be to shift the winnings to an already declared and collected winner rather than to a future game and to those who live for a winning jackpot and "pony" up the dough to have a chance to be a winner.[3]
After careful review of the Gaming Policy Board's decision, this court finds that it is not illegal, arbitrary or an abuse of discretion. The regulations as applied by the the plaintiff plays with the definition of winner claiming that the defendant has failed to define a winner with regulatory specificity. While true, the regulations read as a whole and as applied are a working definition of a winner. As such they comport with proper standards. defendant are not vague nor standardless. The appeal is dismissed.
NORKO, J.