## Marie Oldham Ruerat *vs.* Louis W. Stevens.

First Judicial District, Hartford, May Term, 1931.
Maltbie, C. J., Haines, Hinman, Banks and Avery, Js.

Argued May 5th—decided June 9th, 1931.

*Reinhart L. Gideon,* for the appellant (defendant).

*A. Storrs Campbell,* for the appellee (plaintiff).

BANKS, J. The complaint alleged that the defendant negligently placed or left a lighted cigarette on an upholstered davenport in the plaintiff's apartment, which set fire to the davenport, and that the fire spread throughout the apartment destroying furniture and furnishings of considerable value. The court found the following facts: The plaintiff occupied an apartment the living room in which was about sixteen feet long by fourteen wide with two windows and a door to an outside porch facing west. In the living room there was a large overstuffed davenport with an upholstered arm at either end fourteen inches in width, placed against the southerly wall with its westerly end about two and a half feet from the porch door. Three or four feet from the westerly portion of the davenport and facing it was a large chair upholstered like the davenport. Between the end of the davenport and the west wall of the room there was a tip table and there was a small table on the east side of the chair. The evening of July 22d, 1930, the defendant had taken the plaintiff and her two children for a ride, returned to the plaintiff's apartment about twenty-five minutes past twelve, and upon the latter's invitation entered the apartment. They came into the living room, and the plaintiff sat in the large chair while the defendant seated himself on the davenport at its westerly end opposite and facing her. Both continued so to sit and smoked cigarettes until one-thirty a. m., neither rising except that twice the defendant got up and lighted the plaintiff's cigarette with his lighter as she leaned forward. Upon seating himself the defendant took a rather flat metal ash tray which was on the tip table, placed it upon the upholstered arm of the davenport at his left, and thereafter used it as a place of deposit for his cigarette ashes and butts. The plaintiff used a small cup-shaped tray upon the table at her left for a

similar purpose. At no time after she began to smoke did the plaintiff sit upon or approach within three feet of the davenport. In addition to the fire from the defendant's lighter, and that of the matches which the plaintiff used to light two of her cigarettes, which were promptly extinguished, the only fire in the room up to the time the parties left was that from the burning cigarettes and their butts. When the defendant left the plaintiff went directly to her room, and her daughter came into the living room to turn off the electric lights. She saw in the ash try on the arm of the davenport several cigarette butts, but not all of those which the defendant had put down while he sat there. She discerned no fire or smoke in the room, and neither of the parties noticed any spark or fire in contact with the davenport or any inflammable furnishing of the room when they left it. The doors and windows of the room were left open. The covering of the davenport was upholsterer's denim which was inflammable. About two hours after the plaintiff retired she was awakened by smoke, and found the southwest corner of the living room, within two or three feet of which the left arm of the davenport was located, all ablaze. The fire burned off the left arm and end of the davenport, and the floor between it and the west wall of the room was deeply burned. Neither the chair upon which the plaintiff sat nor any of the rugs on the floor were consumed, though all were singed and blackened by fire and smoke.

The court found that the fire originated at a point in immediate proximity to the tray upon the left arm of the davenport, and that it was kindled by a burning ash from one of the cigarettes smoked by the defendant, either dropping from it as he still held it, or coming in contact with the upholstery because of his failure to deposit it on the tray, or because of his tipping

it off the tray after it was deposited there. The court further found that this conduct of the defendant was negligent and caused the fire, and that the plaintiff was free from contributory negligence.

There was no direct evidence that the fire was caused by the defendant's cigarette nor, if it was so caused, that the manner in which the defendant used the cigarettes, or disposed of the butts, was negligent. The court, having found that the fire originated in the upholstery of the left arm of the davenport in immediate proximity to the ash tray used by the defendant, in the absence of evidence of any other possible origin of the fire at this point, drew the inference that it was caused by the defendant's cigarette, and the further inference that it could not have happened unless there had been a want of due care, and thus reached the conclusion that the plaintiff had sustained the burden of proving that the defendant negligently ignited the arm of the davenport from his lighted cigarette.

The single claim underlying all the defendant's assignments of error is that there was no evidence from which the court could justifiably draw the inference that the defendant negligently ignited the arm of the davenport from his lighted cigarette. The defendant's brief discusses two main contentions, (1) that the requirements of the doctrine of *res ipsa loquitur* were not satisfied by the evidence, and (2) that the requirements of direct or circumstantial evidence establishing negligent conduct of the defendant proximately contributing to the damage were not satisfied by the evidence. The court stated its conclusion that the occurrence of the fire under the circumstance disclosed by the evidence "justified the inference that 'it could not in general experience have happened unless there had been a want of due care' upon the defendant's part," and counsel have assumed that it reached its conclusion

through the application of the doctrine of *res ipsa loquitur*. As we said in *Stebel* v. *Connecticut Co.*, 90 Conn. 24, 26, 96 Atl. 171, the doctrine is a "rule of common sense and not a rule of law which dispenses with proof of negligence" and is merely "a convenient formula for saying that a plaintiff may, in some cases, sustain the burden of proving that the defendant was more probably negligent than not, by showing how the accident occurred, without offering any evidence to show why it occurred." The doctrine is ordinarily relied upon in cases of accidents resulting from defective machines, vehicles or apparatus, where the evidence as to the true cause of the accident is accessible to the defendant but not to the plaintiff. It does not change the burden of proof, but its application satisfies the plaintiff's duty of producing evidence sufficient to go to the jury. The distinctive function of the rule is to permit an inference of negligence from proof of the injury and the physical agency inflicting it, without proof of facts pointing to the responsible human cause. If the proof includes facts tending to show negligence, the doctrine becomes simply a specific application of the general principle that negligence can be proved by circumstantial evidence. Here the injury was the destruction of the furnishings in the plaintiff's living room, and the physical agency which caused the destruction was the fire. But the plaintiff's evidence goes beyond the mere proof that her property was destroyed by fire. It includes evidence of the conduct of the defendant in placing the ash tray upon the inflammable arm of the davenport, and depositing his cigarette butts in it, and the evidence that when the plaintiff's daughter came into the room after defendant had left there were several butts in the tray, but not all that he had put down while he sat there. The defendant testified that he snuffed out all the cigarettes that

he smoked on that occasion. The situation then was not one calling for the application of the *res ipsa loquitur* rule as a distinctive doctrine, but for the determination of whether the circumstantial evidence was sufficient to justify an inference that the fire was caused by the defendant's negligence. There being no direct evidence of negligent conduct on the part of the defendant, the crucial question in the case is whether the occurrence of the fire, under the circumstances detailed, justified the inference that it could not have happened unless there had been a want of due care on the part of the defendant. The defendant says that the trial court drew an inference from various facts in the case as to the location of the fire, that upon this he based the further inference that the fire was caused by the defendant's cigarette, and followed that with the final inference of the defendant's negligence, and contends that such process of building inference upon inference is not legally permissible. It is true that the court said in *Levidow* v. *Starin*, 77 Conn. 600, 603, 60 Atl. 123, that a court is not required to promote the construction of "a cobhouse of inferences." But we pointed out in *Sliwowski* v. *New York, N. H. & H. R. Co.*, 94 Conn. 303, 310, 108 Atl. 805, that this was but a rule of caution, the true function of which was to guide the court in determining whether or not evidence offered was too remote, or whether the plaintiff had established a reasonable probability, and that there is, in fact, no rule of law that forbids the resting of one inference upon facts whose determination is the result of other inferences. 1 Wigmore on Evidence (2d Ed.) § 41. The only question here is whether these successive inferences were justified by the facts. We cannot say that the probability as to the truth of each inference drawn by the trial court was not sufficient to induce a reasonable belief in an impartial mind. When

such probability exists the court is justified in finding the fact. *Hoyt* v. *Danbury,* 69 Conn. 341, 348, 37 Atl. 1051.

The evidence also justified the court's conclusion that the plaintiff was free from contributory negligence.

There is no error.

In this opinion the other judges concurred, except HAINES, J., who dissented.