JOHN BAMBUS, ADMINISTRATOR (ESTATES OF STANLEY BAMBUS, MARY BAMBUS AND BARRY BAMBUS) *v.* BRIDGEPORT GAS COMPANY

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

Argued December 6, 1960—decided March 14, 1961

*Kenneth J. Zarrilli,* with whom were *Irwin E. Friedman* and, on the brief, *Burton J. Jacobson* and *Arthur Levy, Jr.,* for the appellant (plaintiff).

*Charles R. Covert,* with whom was *Bruce E. Dillingham,* for the appellee (defendant).

MURPHY, J. The plaintiff is the administrator of the estates of Stanley, Mary and Barry Bambus, who died from carbon monoxide poisoning on February 12, 1958. The defendant is a public utility which supplies gas to its customers in the Bridgeport area. In 1953, it converted an oil burning heating unit in the kitchen range at the Bambus apartment to one using natural gas as a fuel. Corrosion caused the flue carrying off the products of combustion to become defective. The decedents, who occupied the apartment, were asphyxiated by carbon monoxide fumes. The plaintiff seeks to recover for their deaths. At the conclusion of the trial, the court directed a verdict for the defendant. Subsequently, the court refused to set that verdict aside. The plaintiff has appealed.

In reviewing the action of the court in denying the motion to set aside the verdict, we consider the evidence in the light most favorable to the plaintiff. If there was any evidence upon which the jury could have found liability, the court should not have directed the verdict. *Lurier* v. *Danbury Bus Corporation,* 144 Conn. 544, 547, 135 A.2d 597, and cases

cited. The fact that there was evidence which was in disagreement with or contradictory of that which favored the plaintiff is not controlling. Litigants have a constitutional right to have issues of fact decided by the jury. *Ardoline* v. *Keegan,* 140 Conn. 552, 555, 102 A.2d 352.

On the evidence most favorable to the plaintiff, the jury could have found the following facts: In 1952, the defendant changed over its facilities in order to supply its customers with natural gas instead of manufactured gas. On July 19, 1953, it furnished and installed all of the parts and equipment needed to effect the conversion of the oil burner in the Bambus' kitchen range to gas. The defendant did not thereafter inspect any of this equipment until the tragedy had occurred. The brackets supporting a baffle in the draft hood of the flue from the range to the chimney had been eaten away by corrosion causing the baffle to drop onto the flue pipe below the hood. Proper combustion of the gas burning in the range was thereby prevented, and the resulting carbon monoxide asphyxiated the decedents. The corrosion was caused by the products of combustion of natural gas and the additives used by the defendant to supplement it. Corrosion is a slow process, and it took years to crode the brackets here. The defendant supplied the gas which was used by the Bambus family both before and after the conversion of the burner and until their deaths.

In the memorandum of decision upon the motion to set aside the verdict, the court stated that the plaintiff based his claims of negligence on these theories: (1) The defendant should have known of the corrosive action of the products of combustion of its gas upon the flue-pipe assembly and

should have warned members of the Bambus family of that corrosive action. (2) The defendant was under a duty to make periodic inspections of the range and flue pipe to ascertain their condition. The court stated that the verdict was directed because the plaintiff failed to establish that the defendant owed any duty to the members of the Bambus family subsequent to the installation of the equipment. That reason is in conformity with the general rule that in the absence of notice of a defective condition in the pipes or appliances upon private property, a company supplying gas is not under a duty to inspect the equipment. *Reid* v. *Westchester Lighting Co.*, 236 N.Y. 322, 325, 140 N.E. 712; 38 C.J.S. 735, § 42(d); 24 Am. Jur. 686, § 32; notes, 138 A.L.R. 870, 883, 90 A.L.R. 1082, 1088, 47 A.L.R. 488, 490, 29 A.L.R. 1250, 1252, 25 A.L.R. 262, 272; 4 Personal Injury Actions, Defenses, Damages, "Gas and Gas Companies," § 1.01 [c], and cases cited. The court thus disposed of the plaintiff's second claim of negligence, a claim which, if sound, would mean that the defendant is under a continuous duty to inspect. The court did not, however, mention the plaintiff's first claim, i.e., the failure to warn of the effects of corrosion from the use of gas.

The plaintiff makes no claim that the draft hood, including the baffle and brackets, was defective when the equipment was purchased and installed in 1953. Nor is it claimed that the equipment was warranted to last for a definite period of time, giving rise to an action for breach of warranty. The defendant functioned in a dual capacity. Primarily, it was engaged in the distribution of gas in the area of its franchise. To promote the consumption of its product, it sold, serviced and installed appliances and equipment which used gas as a fuel. That other

dealers also engaged in the sale and installation of similar equipment is attested to by the fact that approximately 50,000 draft hoods were in use in the Bridgeport area at the time of trial, in 1960, and of this number but 3500 to 4000 had been installed by the defendant. There was no evidence that any of these draft hoods, whether installed by the defendant or by plumbers and other independent dealers, had been caused to corrode by the products of the combustion of natural gas, or that any complaints of corrosion had been reported to the defendant. Neither of the experts who testified for the plaintiff had analyzed the gas which the defendant distributed, nor had they analyzed the corrosion on the cone-shaped baffle, or the brackets which supported it, to determine the cause of the corrosion. Neither of them advanced an opinion that it was reasonably foreseeable, at the time of the conversion of the burner or subsequent thereto, that the brackets would so deteriorate from corrosion that the baffle would fall and thus make the burner dangerous.

Had the trial court elected to submit this case to the jury under the foreseeability of harm theory; *Noebel* v. *Housing Authority,* 146 Conn. 197, 201, 148 A.2d 766; *Steinhaus* v. *Steinhaus,* 145 Conn. 95, 98, 139 A.2d 55; we are of the opinion that the facts and evidence would have been insufficient to support a verdict for the plaintiff and that the jury would have been obliged to speculate and guess. A verdict so rendered would have had to be set aside. *Baptist* v. *Shanen,* 145 Conn. 605, 610, 145 A.2d 592; *Currie* v. *Consolidated Ry. Co.,* 81 Conn. 383, 388, 71 A. 356.

There is no error.

In this opinion the other judges concurred.