FRANCES BLADOS, ADMINISTRATRIX (ESTATE OF HENRY BLADOS) *v.* ANTONINA L. BLADOS

KING, C. J., MURPHY, SHEA, ALCORN and PALMER, JS.

Argued December 3, 1963—decided February 25, 1964

*Philip Baroff,* with whom were *Allan J. Rosen* and, on the brief, *Salvatore C. Depiano,* for the appellant (plaintiff).

*Ronald D. Williams,* with whom were *Robert J. Cooney* and, on the brief, *William B. Rush,* for the appellee (defendant).

SHEA, J. The plaintiff brought this action to recover damages for the death of her decedent,

alleged to have been caused by the negligence of the defendant. At the conclusion of the plaintiff's evidence, the court directed a verdict for the defendant. The plaintiff has appealed from the judgment, assigning error in the denial of her motion to set aside the verdict and in a ruling on evidence.

In reviewing the action of the court in denying the motion to set aside the verdict, we consider the evidence in the light most favorable to the plaintiff. *Bambus* v. *Bridgeport Gas Co.,* 148 Conn. 167, 168, 169 A.2d 265. The jury could reasonably find the following facts: On October 14, 1958, and for some time prior thereto, the defendant was the owner and in control of a two-family frame house in Bridgeport. At the rear of the house there was an outside stairway leading from the ground to the second floor. The plaintiff's decedent lived with the defendant, his mother, as a paying boarder. He had a room on the third floor, which was reached by way of the second floor, where the defendant lived. The decedent was separated from his wife and children, who lived in Bridgeport about a mile and a half from the defendant's house. During the afternoon and evening of October 13, the decedent had visited his wife. He left her house around 11 p.m., stating that he was going home to his mother's house. He was sober at that time. At about 7 a.m. on October 14, the body of the decedent was found lying on a tar walk below the rear outside stairway at the defendant's house. The decedent was lying on his back with his arms outstretched and his head resting on the walk just below the outer edge of the stairway. His legs extended away from, and at a right angle to, the stairs. He was in his stocking feet. Both shoes were lying on the ground a foot or two away from each other and close to his right hand.

His head and face were covered with blood, and on the walk under his head and shoulders there was a pool of blood which had flowed from his nose, mouth and ears. He had sustained a fracture at the base of the skull and a laceration at the same location. The only other visible mark of injury was an abrasion on the outer aspect of his left foot. His clothing was undisturbed; there was no sign of any scuffle, nor was there any evidence of foul play. In the opinion of the medical examiner, the decedent had fallen a distance greater than his height and had struck his head on the walk at the place where his body was found; he was knocked unconscious by the impact and lived for some time; his death occurred between 2 and 4 a.m. on October 14.

There was evidence to show that the stairway was steep, at an angle approximating forty-five degrees; the risers of the stairs were uneven and of varying heights; the treads were of varying widths; the handrail was insufficient, of improper height and unsafe. A leader from the roof projected into the stairway for several inches, creating a hazardous condition. Thus, there was ample evidence from which the jury could find that the defendant had failed to exercise reasonable care in keeping the stairway in a reasonably safe condition. See *Facey* v. *Merkle,* 146 Conn. 129, 133, 148 A.2d 261.

In her complaint, the plaintiff alleged that the decedent, while ascending the stairway to the second floor, fell to the ground below. The sole question is whether the jury reasonably and logically could reach the conclusion that the decedent's death resulted from injuries sustained in a fall from the stairway which was caused by the defendant's failure to exercise the care required by law. From the memorandum of decision, it is evident that the trial

court directed a verdict for the defendant on the ground that there was no basis in the evidence for a finding by the jury that the negligence of the defendant in maintaining the stairway had any connection with the decedent's injuries and death. In other words, in the court's view, there was insufficient evidence to connect the decedent's death with the negligence of the defendant and consequently the issue of causation was left to conjecture, surmise and speculation. See *Chasse* v. *Albert,* 147 Conn. 680, 683, 166 A.2d 148; *Palmieri* v. *Macero,* 146 Conn. 705, 708, 155 A.2d 750; *Bruce* v. *McElhannon,* 141 Conn. 44, 48, 103 A.2d 335.

It is true that there was no direct evidence to show that the decedent was ascending the stairway or that he fell from it. Nevertheless, triers of fact must often rely on circumstantial evidence and draw inferences from it. *Cayer* v. *Salvatore,* 150 Conn. 361, 363, 189 A.2d 505. There is no rule of law which forbids the resting of an inference on facts whose determination is the result of other inferences. *Sliwowski* v. *New York, N.H. & H.R. Co.,* 94 Conn. 303, 310, 108 A. 805; *Ruerat* v. *Stevens,* 113 Conn. 333, 338, 155 A. 219; *State* v. *Foord,* 142 Conn. 285, 294, 113 A.2d 591. Proof of a material fact by inference need not be so conclusive as to exclude every other hypothesis. It is sufficient if the evidence produces in the mind of the trier a reasonable belief in the probability of the existence of the material fact. *LeBlanc* v. *Grillo,* 129 Conn. 378, 381, 28 A.2d 127. In *White* v. *Herbst,* 128 Conn. 659, 25 A.2d 68, the plaintiff's decedent had left the second floor of the defendant's house at about 9 p.m. An hour later, his body was found at the foot of the stairs to the first floor. The stairs were in a defective condition. There was no evidence as to the cause of the

decedent's fall. We sustained a plaintiff's verdict, stating (p. 661): "[W]e cannot hold that the jury could not, drawing proper inferences from the facts in evidence, reasonably believe that it was more probable than not that the decedent's fall was due to the defective condition of the stairway." See also *Facey* v. *Merkle,* supra; *Dickson* v. *Yale University,* 141 Conn. 250, 254, 105 A.2d 463; *Hennessey* v. *Hennessey,* 145 Conn. 211, 214, 140 A.2d 473; *Pierce* v. *Albanese,* 144 Conn. 241, 256, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21; *Esserman* v. *Madden,* 123 Conn. 386, 388, 195 A. 739; *Ruerat* v. *Stevens,* 113 Conn. 333, 338, 155 A. 219.

When the decedent in the present case left the home of his wife around 11 o'clock on the night of October 13, he said that he was going home to his mother's house. From this declaration by him and from the other circumstances in the case, we cannot say that the jury could not reasonably find that the decedent in fact went to his mother's house, started to ascend the stairway and fell therefrom as a result of its dangerous condition. In a civil action, circumstantial evidence, in order to be sufficient to sustain a verdict, need not rise to the degree of certainty which excludes every reasonable conclusion other than that reached by the jury. *LeBlanc* v. *Grillo,* supra, 382. The important question is whether the evidence, fairly and impartially considered, would be likely to induce in the minds of twelve persons of ordinary intelligence a reasonable belief that it is more probable than not that the fact in issue is true. *LeBlanc* v. *Grillo,* supra; *Darrow* v. *Fleischner,* 117 Conn. 518, 520, 169 A. 197; *White* v. *Herbst,* supra. Litigants have a constitutional right to have issues of fact decided by the

jury. *Ardoline* v. *Keegan,* 140 Conn. 552, 555, 102 A.2d 352. Here, the facts and the reasonable inferences which could be drawn from them were sufficient to support a verdict for the plaintiff, and the court erred in directing a verdict for the defendant.

Since the case must be remanded for a new trial, we comment briefly on the ruling on evidence which the plaintiff assigned as error. The plaintiff offered in evidence a certified copy of the medical examiner's certificate of the death of the decedent. In the certificate, the medical examiner stated that the decedent "apparently fell from the rear stairs striking his head" and that he had a fracture of the skull. Over the objection of the plaintiff, the quoted words were deleted from the certificate, which was thereafter admitted into evidence. The certificate was delivered to the coroner in compliance with the provisions of § 6-56 of the General Statutes. It was clearly the official duty of the medical examiner to incorporate in the certificate his opinion as to the cause and manner of the decedent's death. The medical examiner, in using the quoted language, did no more than comply with the mandate of § 6-56. The certificate was admissible in evidence, and the court erred in deleting from it the language relating to the circumstances surrounding the death. *Branford Trust Co.* v. *Prudential Ins. Co.,* 102 Conn. 481, 487, 129 A. 379. There is no merit to the claim of the defendant that the statement of the examiner was a "report" and not a certificate of death filed pursuant to the requirements of the statute. It was in fact a certificate delivered in conformity with § 6-56 of the General Statutes and was admissible in evidence. *Hellman* v. *Karp,* 93 Conn. 317, 321, 105 A. 678; *Gett* v. *Isaacson,* 98 Conn. 539, 543, 120

A. 156; *Branford Trust Co.* v. *Prudential Ins. Co.,* supra; *Bozicevich* v. *Kenilworth Mercantile Co.,* 58 Utah 458, 470, 199 P. 406; 5 Wigmore, Evidence (3d Ed.) § 1673.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion KING, C. J., and ALCORN, J., concurred.

MURPHY, J. (dissenting). I find it impossible to agree with the opinion of the majority that the trial court erred either in its ruling on evidence or in directing the verdict. As the evidential ruling, if incorrect, would have a bearing on the correctness of the court's action in directing the verdict, I shall discuss that first.

Under General Statutes § 6-56, the medical examiner is called on to make out and sign two death certificates. The first one he has to leave with the registrar of vital statistics, and it has to be "in the form required by law." The form which is required by law is a certificate on the blank which is furnished by the state department of health under General Statutes § 7-62. Either the physician last in attendance on a deceased person or, in a case where the medical examiner has to act, the medical examiner is obliged to file such a certificate. It has to include "the cause of death, defined so that such death may be classified under the international list of causes of death, . . . and such additional information as the state department of health requires." The certificate of death which was held to be admissible in *Branford Trust Co.* v. *Prudential Ins. Co.,* 102 Conn. 481, 487, 129 A. 379, was the certificate of death which had to be filed with the registrar in accordance with § 228 of the 1918 Revision and

chapter 45 of the 1919 Public Acts. Those sections were the forerunners of §§ 6-56 and 7-62.

The second certificate for which the medical examiner is responsible under § 6-56 has to be mailed or delivered to the coroner. That is the certificate with which we are concerned. The statute is silent as to the information which this certificate should contain. There is no requirement that it include the "cause of death," the essential information in the certificate filed with the registrar and the information which makes the certificate admissible under the rule laid down in the *Branford* case, supra. The certificate in the present case did, however, state the cause as being a fracture of the skull. It also included the statement of the medical examiner that the decedent "apparently fell from the rear stairs striking his head." The court ordered the statement deleted from the exhibit. In the *Branford* case, the medical examiner's conclusion that the cause of death was suicide was admitted because that cause of death was one of the causes listed in the international list. Here, the fall from the stairs, if it actually happened, was not the cause of death but merely the cause of the injury. Therefore the statement which was excluded did not qualify for admission under the *Branford* rule.

In *Lurier* v. *Danbury Bus Corporation,* 144 Conn. 544, 547, 135 A.2d 597, we said: "In the exceptional case, however, a verdict may properly be directed. Our rule as to the direction of a verdict has remained unchanged although it has not always been expressed in identical phraseology. It is clearly and tersely stated in *Mott* v. *Hillman,* 133 Conn. 552, 555, 52 A.2d 861, as follows: 'While the direction of a verdict is not favored, it is justified if upon the evidence the jury could not reasonably

and legally have reached any other conclusion than that embodied in the verdict as rendered; *Bernardo* v. *Hoffman*, 109 Conn. 158, 159, 145 A. 884; and if, had the verdict been rendered for the other party, the evidence was so weak that it would be proper for the court to set it aside. *Currie* v. *Consolidated Ry. Co.*, 81 Conn. 383, 388, 71 A. 356.'" The majority opinion neglects to mention the other evidence in the case which the court had to take into consideration in deciding whether it was more probable than not that the decedent's death was proximately caused by the defective condition of the stairs. *Facey* v. *Merkle*, 146 Conn. 129, 135, 148 A.2d 261. For five months, the decedent had been separated from his wife and three children because of his drinking, and he had been laid off his job as truck driver three months before his death. The medical examiner estimated that death had occurred from four to six hours before his examination of the body at 8 a.m. and that the fatal injury could have been the result of several different causes.

The majority opinion promotes the construction of a "cob house of inferences"—expressly disapproved by us in *Levidow* v. *Starin*, 77 Conn. 600, 603, 60 A. 123. It was incumbent on the plaintiff to establish that the defective condition of the stairs was the proximate cause of her decedent's injury and death. No one saw him on the stairs or on the second floor. This case is clearly distinguishable from the cases cited by the majority in which we held that there was sufficient direct testimonial evidence of circumstances from which logical and reasonable inferences of other material facts could be fairly drawn. *Pierce* v. *Albanese*, 144 Conn. 241, 256, 129 A.2d 606. In *White* v. *Herbst*, 128 Conn. 659, 25 A.2d 68, the decedent had left the second-

floor apartment of a relative about an hour before his body was found at the foot of the stairs. In *Dickson* v. *Yale University,* 141 Conn. 250, 105 A.2d 463, a man on the third floor saw the body pass a window as it fell. In *Facey* v. *Merkle,* supra, 131, the body of the decedent was observed rolling down the last few steps of the stairway.

To render a verdict for the plaintiff here, it would be necessary for the jury to pile inference upon inference. My colleagues seem to approve of so doing because there is no rule of law forbidding it. There is, however, the limitation on the trier that inferences can be drawn only from, and bear a logical relation to, other facts which have been proved and cannot legally rest on facts which are merely surmised. *State* v. *Foord,* 142 Conn. 285, 294, 113 A.2d 591, citing *Fitch* v. *State,* 138 Conn. 534, 541, 86 A.2d 718, and *Donovan* v. *Connecticut Co.,* 86 Conn. 82, 87, 84 A. 288.

The only facts, other than the structural defects in the stairs, which have been proved in this case are: (1) Blados left his wife's house, a mile and a half away, about 11 p.m. to go to his mother's house; (2) his body was found on the ground in the corner made by the main flight of the outside stairs and the short flight leading to it; (3) he had sustained a basal skull fracture; (4) death occurred between 2 and 4 a.m.; (5) his shoes were on the ground near the body. From these facts the jury are to be allowed to infer that when he arrived in the rear yard he (1) removed his shoes, (2) started up the stairs, (3) tripped on a defective tread, (4) fell over the railing, and (5) landed in such a manner on the ground that the base of his skull was fractured—and that the defective condition of the stairs was the proximate cause. It would be just as rea-

sonable to suppose that if he actually made the stairs and started up he dropped his shoes over the railing and as he leaned over to retrieve them toppled to the ground. And what of the inference which could be drawn from the location of the laceration and the fracture? Would a fracture at the base rather than on the vault of the skull result when a person landed on his head? As the court would have had to set aside any verdict which was rendered on the hodgepodge of unreasonable possibilities advanced in this case, it acted properly in directing the verdict. *Currie* v. *Consolidated Ry. Co.*, 81 Conn. 383, 388, 71 A. 356.

In this opinion PALMER, J., concurred.