******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RONALD RAWLS *v.* PROGRESSIVE NORTHERN
INSURANCE COMPANY ET AL.
(SC 18855)

Rogers, C. J., and Palmer, Zarella, McDonald and Espinosa, Js.

*Argued September 20, 2013—officially released January 7, 2014*

*Nathan C. Nasser*, for the appellant (plaintiff).

*Stephanie A. Onorato*, for the appellee (named defendant).

*Stephanie Z. Roberge* and *Christine K. Lassen* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*Opinion*

ZARELLA, J. The plaintiff, Ronald Rawls, appeals from the judgment of the Appellate Court, which reversed the trial court's judgment in an action brought by the plaintiff against the defendants, Progressive Northern Insurance Company (Progressive) and Zabian Bailey,[1] for negligence and underinsured motorist benefits. The action arose from a rear-end collision allegedly caused by Bailey on March 27, 2006, at a red traffic light in the city of Bridgeport. The plaintiff claims that the evidence presented was sufficient for the jury to reasonably find negligence and causation and, therefore, that the Appellate Court improperly concluded that the trial court had abused its discretion in denying Progressive's motions for a directed verdict and to set aside the jury verdict. Progressive responds that the Appellate Court properly reversed the trial court's judgment because the plaintiff proved only that a rear-end collision occurred at a red traffic light. Thus, Progressive contends that the jury must have engaged in conjecture and surmise in finding negligence and causation. We agree with the plaintiff that the evidence in the present case was sufficient for a jury to reasonably find or infer that it was more probable than not that Bailey was negligent and that his negligence caused the collision. Accordingly, we reverse the judgment of the Appellate Court.

The record reveals the following facts and procedural history. On March 27, 2006, the plaintiff was traveling westbound on North Avenue in Bridgeport at approximately 11:30 p.m. when he brought his vehicle to a complete stop at an intersection with a red traffic light. The only vehicle ahead of the plaintiff's was a vehicle occupied by Hsiupian Li. The plaintiff testified that, about fifteen seconds later, he "heard a noise, and all of a sudden [he] blacked out" for "a couple of minutes" because his "car was hit from behind real hard . . . ." The rear-end collision was caused by Bailey's vehicle, which "forc[ed] [the plaintiff's] vehicle to [propel] forward and collide with [Li's] car . . . ." *Rawls* v. *Progressive Northern Ins. Co.*, 130 Conn. App. 502, 505, 23 A.3d 100 (2011). The plaintiff later explained that, when the collision occurred, his head "hit the steering column" before he was thrown backward and "blacked out . . . ." The plaintiff awoke a few minutes later to find that his head "hur[t] real bad" and that he had "glass all over [him]." The plaintiff did not see Bailey's car prior to the collision, did not know where Bailey was looking when the accident occurred, was not aware of Bailey's speed, and could not state whether Bailey had applied his brakes or swerved prior to the collision.

The plaintiff further testified that it took him approximately four minutes to get out of his car. He immediately inspected the damage to the vehicles and saw that the back of his own vehicle was "destroyed" and that the

front was "heavily damaged." The plaintiff did not speak to either of the drivers of the other vehicles. At trial, the plaintiff was able to demonstrate to the jury how the collision had occurred and the position of all three vehicles. He described the relative impact of Bailey's car on his car as "[e]xtremely heavy" and the impact of his car on Li's car as "[k]ind of heavy." The plaintiff also introduced photographs of the damage to his car from the collision.

The investigating Bridgeport police officer, Pedro Rosa, testified that, when he arrived, emergency personnel were present at the accident scene. Rosa observed that Bailey's, the plaintiff's, and Li's vehicles "hit up against" each other. He then spoke to the plaintiff and Li before they were transferred to their respective ambulances. Although Rosa also spoke to Bailey, he did not take a statement from him. Rosa testified that there was "[h]eavy front-end damage" to Bailey's vehicle, "a lot of [rear-end] damage" to the plaintiff's vehicle, and "minor rear damage" to Li's vehicle. Finally, Rosa explained that North Avenue was relatively straight, flat, and wide, and that the weather was "fairly clear" that day.

The plaintiff filed a complaint on August 7, 2007, against Bailey for negligence and against Progressive for underinsured motorist benefits. The plaintiff alleged that Bailey's vehicle had rear-ended the plaintiff's vehicle, causing the plaintiff serious injuries. Specifically, the plaintiff asserted Bailey was negligent because he was following too closely in violation of General Statutes § 14-240 (a), failed to keep a proper and reasonable lookout, failed to apply his brakes in time to avoid a collision, failed to turn his vehicle to avoid the collision, failed to keep his vehicle under proper and reasonable control, was inattentive to his surroundings, and was operating his vehicle at an unreasonable rate of speed. After the plaintiff rested his case, Progressive moved for a directed verdict on the ground that the plaintiff had "not submitted any evidence" from which a jury reasonably could find that Bailey was negligent and that his negligence was the proximate cause of the collision. Progressive argued that, even if the evidence was considered in the light most favorable to the plaintiff, the plaintiff had proven only that there was a rear-end collision while the plaintiff was stopped at a red traffic light. According to Progressive, this evidence was insufficient for a jury to reasonably find negligence and proximate cause because it required the jury to engage in "speculation, conjecture, or surmise." The trial court denied this motion. When Progressive renewed the motion at the end of trial, the trial court denied that motion as well.[2] The jury subsequently returned a verdict in favor of the plaintiff, awarding $51,113 in damages. Progressive then filed a motion to set aside the verdict and for judgment in accordance with its motion for a directed verdict, which the trial

court denied on March 16, 2010. On that same date, the trial court granted Progressive's motion for remittitur,[3] reducing the award to $31,115, and rendered judgment for the plaintiff.

Progressive appealed from the trial court's judgment to the Appellate Court, arguing that the trial court had abused its discretion in denying Progressive's motion to set aside the verdict and for judgment in accordance with the motion for a directed verdict. Progressive again claimed that the plaintiff had failed to present sufficient evidence for the jury to reasonably find or infer negligence and proximate cause. The Appellate Court agreed with Progressive. See *Rawls* v. *Progressive Northern Ins. Co.*, supra, 130 Conn. App. 504, 510. The Appellate Court reasoned that the plaintiff did not provide sufficient evidence because the plaintiff's recollection of a loud noise was "not probative of the elements of negligence," and he had not presented any eyewitness testimony to support his allegations. Id., 509. The Appellate Court also relied on its decision in *Schweiger* v. *Amica Mutual Ins. Co.*, 110 Conn. App. 736, 955 A.2d 1241, cert. denied, 289 Conn. 955, 961 A.2d 421 (2008), in which it had concluded that evidence of a rear-end collision with a vehicle that was stopped in a line of traffic was insufficient for a jury to reasonably find negligence and causation. Id., 741–42; see *Rawls* v. *Progressive Northern Ins. Co.*, supra, 508–509. The Appellate Court thus reversed the trial court's judgment and remanded the case with direction to grant Progressive's motion to set aside the verdict and to render judgment for Progressive. *Rawls* v. *Progressive Northern Ins. Co.*, supra, 510. This appeal followed.

On appeal, the plaintiff first claims that the jury could have found negligence and proximate cause from the circumstantial evidence offered at trial. The plaintiff contends that this court has found evidence insufficient only when the circumstances surrounding the accident were entirely unknown;[4] in contrast, the evidence in the present case is adequate because the plaintiff was able to testify about what had transpired. The plaintiff thus asserts that the Appellate Court improperly reversed the trial court's judgment because there was "some evidence on which the jury might reasonably have reached its conclusion." (Internal quotation marks omitted.) *Marchell* v. *Whelchel*, 66 Conn. App. 574, 582, 785 A.2d 253 (2001). Progressive responds that the Appellate Court correctly concluded as it did because this conclusion was consistent with *Schweiger* and this court's vehicle collision jurisprudence. Progressive argues that the law is well settled that "[a] plaintiff cannot merely prove that a collision occurred and then call [on] the defendant . . . to come forward with evidence that the collision was not a proximate consequence of negligence on his part." (Internal quotation marks omitted.) *O'Brien* v. *Cordova*, 171 Conn. 303, 306, 370 A.2d 933 (1976). Because Progressive contends

that the plaintiff has proven only that a collision occurred, it argues that the jury must have engaged in speculation in finding that there was negligence and causation. We agree with the plaintiff.

We begin our analysis with the applicable standard of review. "The defendant must overcome a high threshold to prevail on either a motion for a directed verdict or a motion to set aside a judgment. Directed verdicts are not favored. . . . A trial court should direct a verdict only when a jury could not reasonably and legally have reached any other conclusion. . . . In reviewing the trial court's decision to direct a verdict in favor of a defendant we must consider the evidence in the light most favorable to the plaintiff. . . . A directed verdict is justified if . . . the evidence is so weak that it would be proper for the court to set aside a verdict rendered for the other party. . . . Similarly, [the trial court] should not set aside a verdict [when] it is apparent that there was some evidence [on] which the jury might reasonably reach [its] conclusion, and should not refuse to set it aside [when] the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles . . . ." (Citation omitted; internal quotation marks omitted.) *Hicks* v. *State*, 287 Conn. 421, 432, 948 A.2d 982 (2008). Put differently, "[i]f the evidence in a case presents such a situation that the minds of fair and reasonable men could therefrom reach but one conclusion, there is no question for a jury. . . . But if the evidence is such that honest and reasonable men could fairly differ and reach different conclusions, the issues should go to the jury for determination." (Citation omitted.) *Terminal Taxi Co.* v. *Flynn*, 156 Conn. 313, 317, 240 A.2d 881 (1968). As a general rule, "[t]he decision to set aside a verdict entails the exercise of a broad legal discretion . . . that, in the absence of clear abuse, we shall not disturb." (Internal quotation marks omitted.) *Hicks* v. *State*, supra, 432.

We turn next to the well established law of negligence. In order to make out a prima facie case of negligence, the plaintiff must submit evidence that, if credited, is sufficient to establish duty, breach of duty, causation, and actual injury. See, e.g., *Winn* v. *Posades*, 281 Conn. 50, 54–56, 913 A.2d 407 (2007). A defendant's duty and breach of duty is measured by a reasonable care standard, which is "the care [that] a reasonably prudent person would use under the circumstances." *Hoelter* v. *Mohawk Service, Inc.*, 170 Conn. 495, 501, 365 A.2d 1064 (1976). After the plaintiff establishes that the defendant did not exercise reasonable care, the plaintiff has the burden of proving that the defendant's negligence caused the plaintiff's injuries. To do so, the plaintiff first must establish causation in fact, that is, that the injury would not have occurred but for the actor's conduct. See, e.g., *Winn* v. *Posades*, supra, 56. The plaintiff then must show proximate cause. Id. Proxi-

mate cause requires that "the defendant's conduct [was] a substantial factor in bringing about the plaintiff's injuries" and that there was "an unbroken sequence of events that tied [the plaintiff's] injuries to the [defendant's conduct]." (Internal quotation marks omitted.) Id. Proximate cause does not require the plaintiff to "remove from the realm of possibility all other potential causes of the accident . . . ." *Hicks* v. *State*, supra, 287 Conn. 438. Instead, the plaintiff must "establish that it is *more likely than not* that the cause on which the plaintiff relies was in fact a proximate cause of the accident." (Emphasis added.) Id. The more likely than not standard ensures that the "causal connection . . . [is] based [on] more than conjecture and surmise." (Internal quotation marks omitted.) *Winn* v. *Posades*, supra, 57.

A plaintiff can prove the elements of negligence using either direct or circumstantial evidence. See, e.g., *State* v. *Heinz*, 193 Conn. 612, 625, 480 A.2d 452 (1984) ("[t]here is no distinction between direct and circumstantial evidence so far as probative force is concerned"). Circumstantial evidence is "evidence of facts from which the trier is asked to infer the existence of, and, so, to find proven, another fact or [set of] facts."[5] *Hennessey* v. *Hennessey*, 145 Conn. 211, 214, 140 A.2d 473 (1958). Circumstantial evidence "need not be so conclusive as to exclude every other hypothesis." *Blados* v. *Blados*, 151 Conn. 391, 395, 198 A.2d 213 (1964). Rather, circumstantial evidence must only "[produce] in the mind of the trier a reasonable belief in the probability of the existence of the material fact." Id.

We now consider negligence in the context of vehicle collisions to determine when a plaintiff has provided enough evidence to establish a prima facie case. In deciding whether a directed verdict is proper in a vehicle collision case, we examine the totality of the evidence and draw all reasonable inferences in favor of the plaintiff. Because it is common knowledge that not all vehicle accidents are the result of driver negligence; cf. *O'Brien* v. *Cordova*, supra, 171 Conn. 306; we consistently have recognized that a collision alone does not create a rebuttable presumption of negligence and causation. See *Winn* v. *Posades*, supra, 281 Conn. 57 ("[a] plaintiff cannot merely prove that a collision occurred and then call upon the defendant operator to come forward with evidence that the collision was not a proximate consequence of negligence on his part" [internal quotation marks omitted]). Thus, the plaintiff must provide at least "some evidence" on which a jury reasonably could find that the defendant was negligent and his negligence was a proximate cause of the collision.[6] (Internal quotation marks omitted.) *Hicks* v. *State*, supra, 287 Conn. 432; see *Winn* v. *Posades*, supra, 57. In addition, in accordance with general negligence principles, the plaintiff must prove that negligence and causation are "more likely than not . . . ." *Hicks* v. *State*, supra, 438. The plaintiff therefore is under no obligation

to show that negligence and causation are the only possibilities, as long as there is sufficient evidence making them more probable than not.

Because direct and circumstantial evidence are equally probative;[7] see, e.g., *State* v. *Heinz*, supra, 193 Conn. 625; a plaintiff may prove the elements of negligence circumstantially. For example, a plaintiff may show negligence and causation in a vehicle collision case by presenting evidence of the type of collision, the road conditions, the weather, other features of the surrounding environment, the actions of the drivers of any other vehicles involved, and the extent to which the vehicles involved were damaged. In *Ghent* v. *Stevens*, 114 Conn. 415, 159 A. 94 (1932), for instance, the plaintiff successfully established negligence and causation by showing, inter alia, that "[i]t was broad daylight on a clear day [and that] [t]he road was straight, and [that] the driver of the . . . car . . . had a full view of the [other] car and of the traffic ahead . . . ." Id., 419.

The present case requires us to apply the foregoing principles to a rear-end collision in which the plaintiff's vehicle was stopped at a red traffic light. Our analysis begins with a review of the totality of the evidence.[8] First, the jury could have considered the fact that the plaintiff was stopped at a red traffic light and that traffic lights are normally highly visible to drivers. The jury also could have considered that, because the weather was clear and the road was flat and straight, the traffic light and the two stopped cars at that light probably would have been visible from a great distance. In addition, the jury could have inferred from the fact that the plaintiff was stopped for fifteen seconds prior to the collision that the traffic light was red for at least fifteen seconds, if not longer, because Li's car already was present when the plaintiff stopped at the light. Bailey thus would have had ample opportunity to react and avoid the collision if he had been acting with reasonable care.

There also was evidence discrediting other potential causes of the collision. For example, it is very unlikely that the collision was caused by the plaintiff's own negligence because the plaintiff was stopped for fifteen seconds before the accident occurred. Even if the plaintiff had stopped abruptly at the traffic light, Bailey still would have had a significant period of time to react prior to the collision. In addition, there was evidence that the plaintiff was able to properly stop his vehicle behind Li's vehicle at the stop light but that Bailey had failed to do so. This fact makes a road hazard or traffic light malfunction less likely. Cf. *Meyer* v. *Barnes*, 2 Conn. App. 485, 487–89, 479 A.2d 1236 (1984). A jury also could infer from the clear weather conditions and flat, straight road that poor road conditions were not a likely cause of the collision.

Considering this evidence in its totality, we conclude

that the jury reasonably could have found that it was more likely than not that Bailey was negligent by failing to keep a proper lookout, failing to apply his brakes in time to avoid the collision, failing to turn his vehicle to avoid the collision, failing to keep his vehicle under proper and reasonable control, and by being inattentive to his surroundings. The present case is similar to *Ghent* v. *Stevens*, supra, 114 Conn. 415, in which this court found that there was sufficient evidence to support findings of negligence and causation based on the facts that there was a rear-end collision in "broad daylight," on a "clear day," and on a straight road with a "full view" of the traffic ahead. Id., 419. From this evidence, this court concluded that the driver "had abundant opportunity either to have stopped his car if under reasonable control or to have turned to the right [to avoid] the accident." Id. Similarly, in the present case, a jury reasonably could find that Bailey had abundant opportunity to have stopped his vehicle if he had been acting with reasonable care. Bailey had ample notice of his duty to stop, as he would have a clear view of the red traffic light and the two stopped cars at the light. Because there is no evidence that Bailey was acting with reasonable care, there is "little, if anything, in light of the facts found, to account for [his] running into the rear of the plaintiff's automobile except a lack of reasonable care on the part of [Bailey] . . . ." *Martinotti* v. *Consolini*, 3 Conn. Cir. Ct. 244, 248, 212 A.2d 423 (1965); see also id. (concluding that plaintiff had presented sufficient evidence in case involving rear-end collision because defendant, "of all persons, best knew whether he caused his car to strike the plaintiff's car in the rear . . . [and] [h]is only explanation of the collision—that the hood flew up, blocking his vision—was discredited by the court").

If the plaintiff succeeded in adducing sufficient evidence from which a jury reasonably could find that Bailey was negligent, the jury could have found causation on the basis of that same evidence. As we noted previously, a plaintiff is not required to disprove all other possible explanations for the accident but, rather, must demonstrate that it is more likely than not that the defendant's negligence was the cause of the accident. In the present case, there are a limited number of possibilities that could have resulted in this type of collision other than negligence. Although it is possible that Bailey's vehicle could have experienced a mechanical failure, or that Bailey could have suffered from an acute medical condition or encountered a road hazard, these explanations are far less likely, in light of the facts of this case, than those offered by the plaintiff, such as the plaintiff's allegation that Bailey was not paying attention at the time of the collision.[9]

The present case is distinguishable from our decision in *O'Brien* v. *Cordova*, supra, 171 Conn. 303. In *O'Brien*, the driver of a vehicle owned by the defendant struck

the rear of the plaintiffs' vehicle while the plaintiffs were stopped at a stop sign. Id., 304. The plaintiffs alleged that the driver was negligent because, inter alia, he "failed to keep his vehicle under proper control, failed to maintain a proper lookout, failed to give a signal of his approach, failed to stop at a stop sign, and followed [the plaintiffs'] vehicle too closely in violation of . . . § 14-240." Id. In support of this contention, the plaintiffs presented evidence about the type of collision and the strength of the impact. See id., 304–305. One of the plaintiffs testified that the plaintiffs' vehicle was "stopped [at] a stop sign, and all of a sudden we felt a big bang behind us—go to turn around and someone had hit us." (Internal quotation marks omitted.) Id., 305. After the collision, one of the plaintiffs spoke with the driver of the defendant's vehicle. Id., 304–305. The jury found for the plaintiffs, and the defendant appealed. See id., 303–304. After evaluating the evidence, the court in *O'Brien* concluded that, even if that evidence was "considered in a light most favorable to the plaintiffs, [it was] clearly insufficient to support a verdict in their favor. All the evidence indicate[d] is that there was a rear-end collision." Id., 306. The court thus reversed the trial court's judgment. Id.

In the present case, the jury had significantly more evidence to consider than the jury did in *O'Brien*. The plaintiffs in *O'Brien* did not introduce evidence about the weather or road conditions, and, thus, the collision could have occurred because the driver did not have a clear view of the stop sign or the plaintiffs' car. The driver in *O'Brien* also could have failed to stop in time because the roads were slippery or poorly maintained. In contrast, the plaintiff in the present case introduced evidence that the weather was clear and that the road was flat and straight. This not only makes it more likely that Bailey was negligent and that his negligence caused the collision, but it also makes other possible causes, such as poor road conditions, less likely. Furthermore, the plaintiffs in *O'Brien* did not introduce evidence about how long they were stopped at the stop sign prior to the collision. Thus, the collision could have been caused by the plaintiffs stopping too abruptly or the driver not having sufficient time to react to the stop sign. In the present case, however, the jury heard evidence that the plaintiff was stopped for fifteen seconds and could thus infer that Bailey would have had enough time to react if he had been acting with reasonable care. Finally, although the plaintiffs in *O'Brien* introduced evidence that there was a stop sign, a stop sign may not always be as visible to drivers as a traffic light, which generally is in a prominent location. Considered in its totality, the evidence in the present case thus provides a significantly more compelling basis on which the jury could have found that Bailey was negligent and that his negligence was more likely than not the cause of the collision.

*Schweiger* v. *Amica Mutual Ins. Co.*, supra, 110 Conn. App. 736, on which Progressive and the Appellate Court relied, also is distinguishable from the present case. In *Schweiger*, the Appellate Court upheld the trial court's decision to grant the defendant insurance company's motion for a directed verdict in an uninsured-underinsured motorist benefits case involving a rear-end collision.[10] Id., 737–38. The plaintiff, Jo Anne C. Schweiger, testified that she was driving in the left lane of a two-lane highway when she stopped her car behind a line of traffic that was waiting to turn left, across the oncoming lanes. See id. Schweiger "considered switching to the right lane but decided against it because of the heavy traffic conditions she [had] observed." Id., 738. After Schweiger was stopped for approximately four or five seconds, another vehicle collided with the rear of Schweiger's vehicle. Id. Schweiger testified that the impact was "a hard jolt."[11] Id. Schweiger, however, did not see the vehicle that struck her and did not speak to the driver of that vehicle after the accident. Id. The defendant moved for a directed verdict, and the trial court granted that motion. Id. On appeal, the Appellate Court concluded that Schweiger had not presented adequate evidence to remove negligence and causation from the field of speculation or conjecture, and thus affirmed the trial court's judgment. Id., 740, 743.

The plaintiff in the present case has presented significantly more evidence of negligence and causation than the plaintiff did in *Schweiger*. Although Schweiger's vehicle was stationary for approximately five seconds—which might not leave a driver behind the vehicle enough time to react—the plaintiff's vehicle in the present case was stationary for fifteen seconds, which is certainly enough time for a driver following the plaintiff to avoid a collision. Furthermore, Schweiger did not adduce evidence about whether the driver following her had a clear view of the line of traffic ahead or whether there was a traffic light providing him with notice that he should stop. The plaintiff in the present case, however, established that Bailey would have had a clear view of the red traffic light and the stopped vehicles waiting at that light. It also is unclear whether Schweiger attempted to switch lanes, thereby confusing the drivers behind her and potentially causing the collision. In the present case, the plaintiff was stationary for so long that any negligence on his part was highly unlikely. We thus decline to be guided by the Appellate Court's reasoning in *Schweiger* because the plaintiff in the present case has provided the jury with more compelling evidence.

Progressive further advocates for its position by making factual comparisons between the present case and *Palmieri* v. *Macero*, 146 Conn. 705, 155 A.2d 750 (1959), *Chasse* v. *Albert*, 147 Conn. 680, 166 A.2d 148 (1960), and *Winn* v. *Posades*, supra, 281 Conn. 50. Although

these cases properly articulate the law, they are not particularly helpful to our analysis because in none of those cases was an eyewitness available to testify about what had happened,[12] and the plaintiff in each of those cases was unable to provide other sufficient, circumstantial evidence to support a finding of negligence or proximate cause.

In *Palmieri,* this court concluded that there was insufficient evidence to support a jury verdict when, in a case involving a single car accident, the car crossed two lanes of traffic multiple times prior to hitting a guardrail, and neither the plaintiff nor the defendant, both occupants of the car, could testify as to what had happened. *Palmieri* v. *Macero,* supra, 146 Conn. 706–708. This court reached the same result in *Chasse,* another case involving a single car accident. *Chasse* v. *Albert,* supra, 147 Conn. 682. In *Chasse,* the vehicle veered off the road and hit a utility pole. Id. Neither occupant could testify; see id.; and an eyewitness testified that the car "appea[red] to keep about the same speed" and then "disappear[ed] off the road." (Internal quotation marks omitted.) Id. In both *Palmieri* and *Chasse,* the trial courts directed verdicts for the defendants because the plaintiffs had not removed from the realm of conjecture the issues of whether the drivers were negligent and whether their negligence proximately caused the plaintiffs' injuries. See *Chasse* v. *Albert,* supra, 683; *Palmieri* v. *Macero,* supra, 708. On appeal in both cases, this court reasoned that there were a variety of explanations for why the allegedly negligent drivers might have been driving erratically, and the plaintiffs had not adduced enough evidence for a jury to reasonably infer that the drivers' negligence was more likely than not the cause of the accidents. See *Chasse* v. *Albert,* supra, 683; *Palmieri* v. *Macero,* supra, 708.

In *Winn* v. *Posades,* supra, 281 Conn. 50, the plaintiff, Donna Winn, presented evidence that the named defendant, David Posades, was negligent but did not present any direct or circumstantial evidence that Posades' negligence was the proximate cause of the collision. Id., 56, 59–60. Winn presented evidence that Posades was driving fifty-eight to seventy-five miles per hour in a twenty-five mile per hour zone when he hit the victim's vehicle at an intersection. Id., 52. Nevertheless, because the victim in the collision had died and Posades was unable to recall the accident, there was no evidence about exactly how the collision occurred. See id., 56. This court determined that there were a variety of other possibilities that were equally as likely to have been the cause of the collision, such as the victim's impairment due to his consumption of alcohol and marijuana around the time of the accident, the possibility that the victim ran a red light and improperly entered the intersection, or the possibility that the traffic light malfunctioned. Id., 60. This court thus concluded that there

was no evidence making Posades' negligent conduct more likely than not the cause of the collision. See id., 59–60.

These three cases are all distinguishable from the present case. In *Palmieri* and *Winn*, none of the drivers or occupants could testify about the collisions or provide any information about how they had occurred. See id., 56; *Palmieri* v. *Macero*, supra, 146 Conn. 706–708. In *Chasse*, although there was an eyewitness, that eyewitness could corroborate only that a collision had occurred and did not provide additional information about negligence or causation. See *Chasse* v. *Albert*, supra, 147 Conn. 682 ("[The eyewitness was the] [o]nly . . . other [person] . . . on the highway at the time. [He] was approaching from the opposite direction . . . . He said he saw the lights of an approaching car at a distance of about 150 yards, that the car appeared to keep about the same speed, and that the lights just seemed to disappear off the road." [Internal quotation marks omitted.]). Thus, in *Palmieri*, *Chasse*, and *Winn*, there was no evidence to causally connect the conduct of the allegedly negligent driver with the collision and subsequent damage and injuries.[13]

In contrast, the plaintiff in the present case presented circumstantial evidence of Bailey's negligence and proximate cause through, inter alia, his own eyewitness testimony about what had occurred. The plaintiff testified that he was stopped at a red traffic light for approximately fifteen seconds, felt an "[e]xtremely heavy" impact at the rear of his vehicle, was thrown forward and backward in his car, blacked out, and awoke to find glass everywhere. In fact, the plaintiff was so aware of the circumstances that he was able to demonstrate to the jury how the collision occurred. Additionally, Officer Rosa testified as to the position of the vehicles and the damage that they had sustained as a result of the impact. There was further evidence that the weather was clear and the road was straight. It is common knowledge that traffic lights are usually highly visible to drivers and that the operator of a vehicle should slow down and eventually come to a complete stop in observing a red traffic light. On the basis of these facts and reasonable inferences, a jury reasonably could find that it was more likely than not that Bailey was engaged in one or more of the negligent acts alleged by the plaintiff, namely, failing to keep a proper and reasonable lookout, failing to apply his brakes in time to avoid a collision, failing to turn his vehicle so as to avoid the collision, failing to control his vehicle, and being inattentive to his surroundings.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.

[1] The plaintiff filed a complaint against both Bailey and Progressive on

August 7, 2007. The plaintiff had an automobile insurance policy with Progressive that included uninsured and underinsured motorist coverage as required under General Statutes § 38a-336 et seq. At the time of the collision, Bailey was underinsured. Thus, the plaintiff brought the present action against Bailey for negligence and Progressive for underinsured motorist benefits. Bailey represented himself and Progressive was represented by counsel. Progressive has filed all the documents in the present appeal, and Bailey has not actively participated.

[2] The trial court found that the plaintiff had not presented sufficient evidence to establish that Bailey was following too closely in violation of § 14-240 (a) or that he was operating his vehicle at an unreasonable rate of speed. The trial court thus struck these two issues from the jury interrogatories. Nonetheless, the jury answered "yes" as to the issue of whether Bailey was following too closely. Progressive argues that the jury's finding as to this stricken issue is evidence that the jury engaged in speculation, conjecture, and surmise in deciding negligence. Although this finding certainly demonstrates that the jury might have been confused about the procedural posture and mechanics of the case, it does not demonstrate that the jury was speculating when it decided that Bailey was negligent with respect to each of the other issues presented in the interrogatories.

Progressive further contends that a jury note delivered to the trial court during deliberations indicates that the jury engaged in surmise and conjecture. The jury note provided: "Why wasn't Bailey present? Was Bailey charge[d] [with] neglect? Is there paperwork on . . . Bailey?" The trial court instructed the jurors that "[t]he answer to all those questions [was that] you're not to concern [yourselves] about that because [there was] no evidence about that. You can't surmise or speculate or anything else." Because the trial court correctly instructed the jury not to speculate about why Bailey was not present at trial, the jury's question does not demonstrate that it engaged in conjecture or surmise in deciding that Bailey was negligent.

[3] Progressive filed the motion for remittitur on the ground that the plaintiff already had received $20,000 from Bailey.

[4] For example, there may be no person who can testify regarding the circumstances surrounding a collision because potential witnesses either have died or sustained injuries that prevent them from recalling the events surrounding the collision. See, e.g., *Palmieri* v. *Macero*, 146 Conn. 705, 706–708, 155 A.2d 750 (1959).

[5] The inferences drawn from circumstantial evidence are distinct from conjecture and surmise. Circumstantial evidence requires that "the trier [find] that the facts from which the trier is asked to draw the inference are proven and that the inference is not only logical and reasonable but strong enough so that it can be found that it is more probable than otherwise that the fact to be inferred is true." *Hennessey* v. *Hennessey*, 145 Conn. 211, 214–15, 140 A.2d 473 (1958). In contrast, impermissible conjecture and surmise would require a jury to infer a new set of facts from unproven or nonexistent facts. See Black's Law Dictionary (9th Ed. 2009) (defining "surmise" as "[a]n idea based on weak evidence; conjecture" and defining "conjecture" as "[a] guess; supposition; surmise"); see also Merriam Webster's Collegiate Dictionary (11th Ed. 2003) (defining "surmise" as "a thought or idea based on scanty evidence" and defining "conjecture" as "[an] inference from defective or presumptive evidence").

[6] For example, in *Toomey* v. *Danaher*, 161 Conn. 204, 205–206, 286 A.2d 293 (1971), the plaintiff, Louis Toomey, whose vehicle was involved in a one car accident, brought an action against the administrator of his wife's estate. It was unclear whether Toomey or his wife was driving the car at the time of the accident as both were ejected from the passenger compartment during the accident. Id., 206–207. At trial, Toomey submitted evidence that the car's brakes were applied, skid marks were on the road, the car struck the center guardrail, and the car split in two. Id., 206. In addition, a toll collector who saw the car just before the accident testified that the car had appeared to "[proceed] normally." Id., 208. Neither Toomey nor his wife could testify, however, about what had transpired because his wife had died as a result of her injuries and Toomey suffered from amnesia. Id., 207. Thus, due to the lack of eyewitnesses and other evidence of negligence, the jury had no evidence from which it could infer that Toomey's wife had engaged in negligent conduct and that her negligence was the cause of the accident. See id., 214.

A plaintiff also may attempt to prove negligence and causation by adducing evidence that other causes are less likely. Nevertheless, Toomey did not succeed in doing so in that case. Toomey attempted to prove that his wife

had no "heart-connected abnormality" as evidence that a one car accident was caused by negligence. Id., 211. Nevertheless, this court found this evidence insufficient because "all sudden illnesses are not heart-connected" and, therefore, could not "rule out sudden illness as a possible cause of the accident." Id. Although Toomey was not required to disprove sudden illness conclusively in order to prove negligence, evidence of no heart connected abnormality was still insufficient to make negligence more likely than not the cause of the accident.

[7] Plaintiffs often must rely on circumstantial evidence in vehicle collision cases. See, e.g., *Hennessey* v. *Hennessey*, supra, 145 Conn. 215 ("[i]n many cases . . . circumstantial evidence is the only evidence available to a party to prove a fact material or essential to his cause of action or defense"). Plaintiffs therefore frequently submit a vast array of evidence to prove negligence in vehicle collision cases, including the plaintiff's testimony, expert and eyewitness testimony, photographs, and demonstrative evidence.

For example, in *Terminal Taxi Co.* v. *Flynn*, supra, 156 Conn. 315–16, the plaintiff relied on evidence that both drivers were driving in the same direction on a one-way street, the plaintiff's vehicle was struck in the left rear by the other vehicle, the visibility was good, the road was dry, and the damage to the vehicles was significant. This court reasoned that, even though "there was no direct evidence to show the manner in which [the other driver] was operating his vehicle before the impact"; id., 316; the jury reasonably could find for the plaintiff because there was sufficient evidence, even though "[t]he evidence . . . was circumstantial." Id.

[8] In determining whether evidence is sufficient, it is critical not to look at each piece of evidence in isolation but, rather, to consider each piece in the context of the whole. For example, the Appellate Court reasoned in the present case that the plaintiff did not provide sufficient evidence because the plaintiff's recollection of a loud noise was "not probative of the elements of negligence . . . ." *Rawls* v. *Progressive Northern Ins. Co.*, supra, 130 Conn. App. 509. We agree that a loud noise, by itself, does not conclusively establish negligence. When this evidence is considered together with the other evidence in the case, however, the loud noise can provide valuable information about the collision and thus is relevant and probative.

[9] We note that a defendant is free to mount a defense by introducing evidence of another possible cause—e.g., mechanical failure—in an attempt to convince the jury that this cause was more likely than negligence. In order to reach this stage, however, a plaintiff first must present at least some evidence of proximate cause.

[10] As in the present case, the defendant in *Schweiger* was an insurance company and the alleged tortfeasor was the driver of the vehicle that collided with the rear of Schweiger's vehicle. *Schweiger* v. *Amica Mutual Ins. Co.*, supra, 110 Conn. App. 737–38.

[11] Schweiger also introduced photographs to prove that there was damage to her vehicle and to show what the damage looked like. See *Schweiger* v. *Amica Mutual Ins. Co.*, supra, 110 Conn. App. 738.

[12] It is important to note that a lack of eyewitnesses will not always mean that a plaintiff has not adduced sufficient evidence to prove negligence and causation. In some collision cases, less evidence will be required for a jury to reasonably infer causation. For example, evidence of a rear-end collision with a stopped vehicle often will remove the issue of causation from the realm of conjecture. If a jury finds that the defendant had a duty and breached that duty—such as by driving too fast—and that the defendant collided with a stopped car, there is little doubt about whether the defendant's negligence was the cause of the collision. Thus, although eyewitness or expert testimony often serves as more compelling evidence, there is no bright line rule that a plaintiff always must offer it.

[13] For similar reasons, we also decline to follow our decisions in *Terminal Taxi Co.* v. *Flynn*, supra, 156 Conn. 313, and *Hicks* v. *State*, supra, 287 Conn. 421. In both *Terminal Taxi Co.* and *Hicks*, there were two cars in motion at the time of the collision that were traveling at various speeds. See *Hicks* v. *State*, supra, 426–27; *Terminal Taxi Co.* v. *Flynn*, supra, 317–18. In neither of these two cases did the vehicles remain stationary at the point of impact, as they did in the present case. These differences in facts create an entirely new set of possible inferences and challenges for the jury. For example, it might be easier to prove negligence when there is an independent eyewitness but also more difficult to prove causation when both cars are in motion. There is no need for us to engage in such complicated comparisons in the present case because, as we discussed previously in this opinion, the principles of negligence make the result of the present case clear.